#### LANS v. BRISTOW.   (No. 5716.)

(Court of Civil Appeals of Texas. San Antonio. Oct. 11, 1916.)

1. EXECUTORS AND ADMINISTRATORS ⬅═221(5) —CONTRACT—CLAIM AGAINST ESTATE—EVIDENCE.

Evidence in claim against decedent's estate *held* insufficient to show execution of alleged oral contract to pay for care of deceased the sum of $30 per month, as alleged.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 903½, 1874, 1876; Dec. Dig. ⬅═221(5).]

2. LIMITATION OF ACTIONS ⬅═50(2)—ACTIONS —COMPUTATION OF TIME—WHEN STATUTE BEGINS TO RUN.

Even though a contract to pay $30 per month for care were proved, the statute of limitations of two years would begin to run as against the amount due each month when it fell due at the end of the month, and the cause of action was not delayed until the death of deceased, as would have been the case had the contract been to devise land.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 274; Dec. Dig. ⬅═50(2).]

Appeal from Bexar County Court for Civil Cases. John H. Clark, Judge.

Action by Louis D. Bristow against F. J. J. Lans, administrator of the estate of C. B. Anderson, deceased. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Emmett B. Cocke and C. J. Matthews, both of San Antonio, for appellant. A. E. Heilbron, of San Antonio, for appellee.

FLY, C. J. This is a suit for $720, alleged to be due appellee for services as a nurse for C. B. Anderson, deceased, against appellant, as administrator of the estate of said Anderson. The cause was submitted to a jury on special issues, and upon the answers the

court rendered a judgment for appellee for the full amount of her claim.

This suit is on a claim alleged to have arisen on an express contract on the part of C. B. Anderson, deceased, to pay appellee the sum of $30 a month for nursing him from July, 1911, to September, 1913. Anderson died on August 29, 1914, and the claim must depend upon an oral agreement alleged to have been made prior to July 5, 1911, and before appellee moved into the home of deceased. No effort, it seems, was ever made to obtain any evidence in writing of the alleged contract, and its existence must rest upon the evidence of close friends and relatives of appellee.

[1] The allegation of the petition is that the contract was made on or about July 5, 1911, and that she was to begin her services on July 6, 1911. The proof showed that she and her brother moved into the house of deceased immediately after the contract was made, and although deceased had agreed to pay appellee $30 or $35 a month, rent was charged and collected at the rate, first of $7 and then at $9 a month for the use of the house of deceased, and that rent was paid; no effort being made to offset it against the amounts becoming due from month to month for services of the nurse. It was testified that these services were to be continued during the lifetime of deceased, and yet appellee left him, to take care of her mother, for nearly a year before his death. Dr. Anderson, it appears, had a man employed to take care of him during the nights for seven months in each of the years that appellee claimed she nursed him. She was all the time acting as housekeeper for her brother and nephew. The evidence showed that Dr. Anderson went to town by himself almost every day. The evidence of Keeton, brother of appellee, showed that, if a contract was made, it was before appellee moved into the house of deceased, and that the contract was that "he would pay her well to take care of him." That evidence did not establish a contract for $30 a month, which was alleged in the petition.

The testimony of Mrs. P. E. Borger was that the contract was that deceased would give her $30 or $35 a month, and that it was made before appellee moved into the house. On cross-examination she contradicted that statement and stated positively:

"He didn't state at any time how much he would pay her, or for what length of time he was going to pay her, or how long he expected her to do anything, nor she didn't say how long she would stay there, one year or ten years, one month or ten months."

She afterwards stated that the agreement was not to pay appellee any money, but to give her the property after his death. Upon such testimony the estate of a man whose lips were closed in death was held liable.

The evidence is too uncertain to sustain the verdict to the effect that an express contract was made to pay appellee a certain sum every month for the period alleged. The evidence tends more strongly to show an implied than an express contract.

[2] We are of the opinion that if the evidence had been amply sufficient to establish an express contract to pay $30 a month for services, that the amount became due at the end of each month, and the statute of limitations of two years would begin to run against each monthly sum from the time it became due. City of Paris v. Cabiness, 44 Tex. Civ. App. 587, 98 S. W. 925. C. B. Anderson died in August, 1914, and, we think, under no circumstances could appellee recover for the services from July 6, 1911, to August 29, 1912. The case of Raycraft v. Johnston, 41 Tex. Civ. App. 466, 93 S. W. 237, is cited as holding that the cause of action arose only at the time of the death of the man whose estate was to be charged with the debt. Under the allegations in that case, which were that the deceased had promised to devise all the property to the claimant, but had died intestate, the opinion was undoubtedly correct. But no such case is presented by the allegations and facts of this case. The suit is based on an express contract to pay a certain sum per month beginning on July 6, 1911, and continuing as long as deceased required the services of appellee. It was also alleged and proved that appellee at the end of each month, at least until September, 1912, demanded her money. The jury found that there was a positive contract to pay appellee $30 or $35 a month. If the contract was ever modified it was in the latter part of 1912. No promise to devise the property to appellee was pleaded, and the prayer was for a judgment establishing the claim of appellee against the estate of C. B. Anderson, deceased, and not for any property that should have been devised to her.

We hold that the evidence is not sufficient to establish the contract alleged in the petition, and the verdict is manifestly against the great weight of the testimony. Willis v. Lewis, 28 Tex. 185; Zapp v. Michaelis, 58 Tex. 270; Railway v. Somers, 78 Tex. 439, 14 S. W. 779; Railway v. Sherer, 183 S. W. 404. Contradictions of a witness of his own statements make his testimony insufficient to justify a reliable conclusion. Easton v. Dudley, 78 Tex. 236, 14 S. W. 583. The testimony of Mrs. Borger, the only witness to the contract, alleged in the petition, was a mass of irreconcilable contradictions which, in the language of the Supreme Court in the case last cited, made it "of little value—not enough to justify a reliable conclusion." Railway v. Walker, 38 Tex. Civ. App. 76, 85 S. W. 28.

The judgment is reversed, and the cause remanded.