**William A. PARKER, Appellant,**

v.

**Joe C. ROLLS, Appellee.**

**No. 10768.**

Court of Civil Appeals of Texas.

Austin.

July 27, 1960.

After Remittitur Aug. 24, 1960.

Scurry, Scurry, Pace & Wood, Dallas, for appellant.

Grindstaff & Grindstaff, Ballinger, for appellee.

HUGHES, Justice.

Joe C. Rolls, appellee, sued William A. Parker for the sum of $1,212.50, interest and attorney's fees allegedly due under a contract executed by A. W. Smith allegedly as agent for appellant, Mr. Parker.

The contract was in the form of a letter addressed to: Mr. A. W. Smith, 111 Devonshire St., Boston, Mass. and Mr. Wm. A. Parker, 200 Berkeley St., Boston, Mass., dated March 5, 1954. The letter was signed by A. W. Smith and Joe C. Rolls and reads:

"From: Joe C. Rolls

"For a fee of one hundred dollars ($100.00) per month I agree to supervise production operations on leases and wells belonging to Wm. A. Parker, et al, located in Taylor County and Runnels County, Texas. Pumpers salary, car mileage, clerical and personal expenses will be borne by me. All well supplies and well servicing will be for your account. Any expense involving more than one hundred dollars ($100.00) will require your approval before same is incurred.

"I will prepare all monthly and annual reports required by the Railroad Commission of Texas and will submit to you a monthly production report giving pertinent production data for each well.

"I will supervise your production as diligently and economically as possible. I will not be liable for any unsatisfactory results which may occur from work-over operations and equipment failures.

"This agreement may be terminated by either of us upon two weeks' notice.

"If the above is satisfactory please sign and return one copy to me with date you desire same to become effective.

"/s/ A. W. Smith     /s/ Joe C. Rolls
"3/5/54"

Attached to appellee's pleading was a sworn account reciting the operation of three wells in Taylor County and two wells in Runnels County for the months from March, 1954 through December, 1954, inclusive, at $100 per month per well, or a total indebtedness of $5,000. Credits are shown commencing with April, 1954, and for each month thereafter through January, 1955, except for the month of September, 1954, totalling $3,787.55, leaving a balance due of $1,212.50.

Appellant filed a first amended answer in which was contained a general denial and a special answer from which we quote:

"II. The Defendant states that he has paid the Plaintiff promptly all sums of money due Plaintiff for services rendered to the Defendant in this connection. Defendant alleges that he was the owner of an undivided interest in oil and gas leases in certain wells and that in said wells Defendant states he was entitled only to a portion of the oil produced from said leases and that he has paid Plaintiff the sum of money due by him of his part ownership. Defendant alleges that Plaintiff knew that other parties *owed* undivided interest in some of these oil and gas leases, and, as a matter of fact, was working and associated with two (2) of such other owners named George Barrell and Robert Reiser, who are parties who owe Plaintiff part of the monies claimed in this suit.

"III. Defendant alleges further that said contract attached as Exhibit 'A'

was not executed by him or anyone with authority to bind this Defendant to pay the debts of other owners of interests in the properties for which Plaintiff is claiming money due for work performed."

The allegations as to the lack of authority of A. W. Smith were supported by affidavit.

This answer was filed February 7, 1959. Prior thereto, February 4, 1959, there was filed "Defendant's First Supplemental Answer, supplementing his First Amended Answer." In this answer appellant pleaded, solely, the two and four year statutes of limitation. Art. 5526 and Art. 5527, Vernon's Ann.Civ.St.

On October 1, 1959, appellant filed "Defendant's Second Supplemental Answer, supplementing his First Amended Answer and First Supplemental Answer." This answer pleaded, solely, the two and four year statutes of limitation.

By supplemental petition (called "answer") appellee pleaded that appellant had ratified the acts of Smith and was estopped to deny his authority in the premises.

The case was submitted to a jury which made these findings:

(1) That Smith was acting for and in behalf of appellant when the Rolls-Smith contract was made.

(2) That appellant knew of such contract when he made payments to appellee in connection with the operation of the wells mentioned in such contract.

(3) That appellant was the operator of the wells mentioned in the contract.

(4) That appellant was the only interest owner of the wells mentioned in the contract who exercised authority over their operation.

(5) That appellee performed services for appellant as operator of the wells mentioned in the contract; that appellee had not been fully paid for such services, and that there was due him $1,212.50.

(6) Appellee sent statements for his services to Smith for the first two or three months of operation.

(7) Appellee knew that Robert Reiser believed he had an interest in the Taylor County wells when he paid part of the statement sent by appellee for March, 1954.

(8) That in March, 1954, Smith was not acting for his own benefit in connection with the operation of the wells.

(9) Appellee decided, after the first two or three months of operation to treat the contract as binding on appellant.

(10) Smith when he executed the contract was not acting for all the owners of the Taylor County leases.

(11) Appellant had knowledge of the contract signed by Smith prior to its termination.

Appellee moved for judgment on the verdict. Appellant moved for a mistrial on the ground that certain jury issues were conflicting, and that the Court erred in refusing to submit a requested special issue. He also moved for judgment not to exceed $131.25 and attorney's fees.

Judgment was entered for appellee for $1,212.50, interest at 6% per annum from February 1, 1955, and $400 attorney's fees.

Before proceeding to a discussion of the points of error made by appellant, we desire to notice the state of his pleadings. The two supplemental answers were not in response "to the last preceding pleading" by appellee. Rule 69, Rules of Civil Procedure. The last preceding pleading by appellee on file when the first supplemental answer was filed was appellee's original petition to which appellant had on file his first amended answer.

When appellant's second supplemental petition was filed the last preceding pleading of appellee was his first supplemental petition (called answer) which pleaded

ratification and estoppel to appellant's answer alleging lack of authority on the part of Smith. Obviously appellant's plea of limitation was not in response to this pleading.

If we do not consider either of these pleadings, then appellant is left without his plea of limitations.

If, as it has been held,[1] a supplemental pleading may be considered as an amendment, then, under Rule 65, T.R.C.P., the amendment takes the place of the pleading for which it is substituted. This reasoning would leave appellant without his plea of want of authority of Smith to execute the contract sued upon.

■ Since appellee has not questioned these pleadings, we have concluded to dispose of appellant's points without regard to the sufficiency of the pleadings.

Appellant was the owner of the entire leasehold interest in two wells in Runnels County, and of an undivided interest in the leasehold, or working interest, in three wells in the Lawn Oil Field in Taylor County.

By undisputed evidence it was established that a custom exists in the oil business that where a lease is jointly operated, that is where the working interest (distinguished from royalty) is owned by various owners, one of the owners is designated as operator of the lease and "that operator handles the properties as they were his own and in turn he bills his partners for their proportionate share," the operator paying all bills and collecting from the other owners.

The appellant did not testify, nor did A. W. Smith who was deceased at the time of trial.

On February 9, 1954, appellee wrote a Mr. George H. Barrell stating the terms upon which he would operate for Mr. Robert Reiser et al. and Mr. William A. Parker et al. in the Lawn and Cree-Sykes Fields, a copy of this letter being sent to A. W. Smith.

On February 16, 1954, A. W. Smith wrote appellee that he "As the representative of Mr. Wm. A. Parker" authorized him to operate "Mr. Parker's wells in Runnels County as well as his interests in the Lawn Field," the terms to be as stated in the February 9th letter.

On March 5, 1954, the letter (contract) previously copied was sent to appellant.

On April 4, 1954, appellee sent to appellant in care of A. W. Smith in Boston a bill for $500 for operation of the wells mentioned in the contract of March 5, 1954, a copy of the bill being sent to A. W. Smith. Of this amount $100 was paid appellee by Robert Reiser and appellant paid him, by check, $368.75. Appellant paid nine other similar amounts monthly to appellee on statements sent by him to A. W. Smith or directly to appellant. Mr. Reiser did not pay more than a total of $200 during this period, the evidence showing that he stopped paying because of title troubles over his interests in the wells.

On March 16, 1954, appellee wrote appellant as follows:

"Mr. Wm. A. Parker
"200 Berkeley Street
"Boston 16, Mass.

"Dear Mr. Parker:

"Since I was unable to contact Mr. Smith today, I am writing you for clarification of details regarding operations on your wells in Units M, T, and W, Lawn Townsite, and your Burrus No. 1 and Brown No. 1, Cree-Sykes Field.

"Needless to say, your credit rating with all the oil field supply houses is A-1; however, for your own benefit I have to know whether you, as operator, are responsible for operating costs, both tangible and intangible, on the above wells. It is generally customary

1. Kennann v. Deats, Tex.Civ.App., Amarillo, 258 S.W.2d 145, writ ref. N.R.E.

for the operator to assume above costs and bill the various interest holders for their share of costs.

"Your Griffin No. 1 and Rountree No. 1 are ready to be put on the pump and can be so equipped within a week for approximately $5,000 each; less if used material can be obtained, each well should be capable of pumping 20–30 barrels of oil per day.

"Your pumper on the above wells states he is due back wages for labor. I am not aware of the various interests in the above wells; however, before I assume responsible supervision of same I would like to do so without any obligations carried over.

"Electrical service for pumping your Rountree No. 1 and Griffin No. 1 will cost approximately $20.00 each. This monthly cost is slightly higher than Co-operative or REA electricity. If satisfactory with you both wells can be put on the pump within a week.

"Very truly yours,
"Joe C. Rolls
"c.c.: Mr. A. W. Smith, 111 Devonshire St., Boston 9, Mass."

On March 19, 1954, appellant replied to this letter as follows:

"Dear Mr. Rolls:
"In answer to your letter of March 16 there are several questions which I cannot answer from pure ignorance of my responsibility.
"I shall be talking to Mr. Smith today or Monday and will answer this more responsibly then.
"Sincerely,
"/s/ William A. Parker."

On December 14, 1954, appellee wrote appellant as follows:

"Dear Mr. Parker:
"With reference to your letter of December 10, 1954, in regard to inquiry from Comptroller of Public Accounts, State of Texas, concerning report on Rountree Lease for May, 1954, the reports I have show 185 barrels of oil sold. I mailed all run tickets to you some time ago. If you will send me the May 1954 run tickets on the Rountree, I will check them.

"Effective January 1, 1955, I wish to be relieved of supervising your production in Taylor and Runnels Counties. Since I have not collected full amount of bills for supervision which I have sent you each month, I can not continue going in the hole each month.

"Very truly yours,
"/s/ Joe C. Rolls"

On December 17, 1954, appellant replied as follows:

"Dear Mr. Rolls:
"In answer to your letter of December 14 I am enclosing the May, 1954 run tickets on the Roundtree Lease. Will you please check these and return them to me.

"I note that you wish to be relieved of supervising our production in Taylor and Runnels Counties as of January 1, 1955. I will therefore make other disposition. Thank you very much for past services.

"Sincerely,
"Encs. /s/ William A. Parker"

With this full statement of the case we will now proceed to dispose of appellant's points.

■ The first point is that all monthly payments accruing under the contract more than four years before the institution of this suit on November 17, 1958, are barred by the four year statute of limitation. Art. 5527, V.A.C.S.

We sustain this point. The contract expressly and clearly provides for the payment of a monthly fee for supervising production operations on certain leases and wells. This fee was due at the end of each month during which the services contracted for were performed. "Under the contract these payments were due and payable

each month, and limitation would begin to run on each payment due from its due date." Pollack v. Pollack, Tex.Com.App., 39 S.W.2d 853, 855. See also Lans v. Bristow, Tex.Civ.App., San Antonio, 188 S.W. 970.

Appellee contends that the contract in suit is a continuing contract and no cause of action accrued thereon until its termination on January 1, 1955. We cannot agree with this contention. The contract was terminated by appellant in accordance with the provisions of the contract. One does not breach a contract by acting in accordance with its terms. The termination of this contract by appellee under these circumstances was not tortious and neither created nor accrued any cause of action in his behalf or against him.

■ Point two is that the Court erred in refusing to submit to the jury appellant's requested special issue inquiring whether, during the first two or three months of the contract period, A. W. Smith was the operator of the leases and wells involved.

We believe there was no error in this respect. There was no pleading to such effect. Neither was it a controlling issue. The case was tried on the theory of agency, that Smith was appellant's agent.

Furthermore, we find no evidence that Mr. Smith was acting in his own behalf or for his own benefit. All of his conduct is subject to reasonable explanation only on the established premise that he was acting for appellant.

■ Point three is that there was conflict between the jury finding that for the first two or three months statements were sent by appellee to Smith and thereafter he decided to treat the contract as binding on appellant.

The first finding was purely evidentiary and was not a controlling issue. It should not have been submitted. It is only when answers to material and controlling issues

conflict that a verdict will not support a judgment. 41–B Tex.Jur., Sec. 585.

■ Point four is that the Court erred in not sustaining appellant's special exception to appellee's First Supplemental Petition on the ground that its allegations were vague.

Appellant had denied, under oath, the authority of Smith to agree to pay the operating costs of other owners. Appellee pleaded, in response, that appellant had by making partial payments to appellee, and by paying other accounts for labor and material incurred in operating the leases involved had ratified the action of Smith in the premises, and that by failing to deny the authority of Smith estopped appellant, under the circumstances, to deny such authority.

We do not believe such pleading was subject to the objection that it was vague. We, also, fail to detect any harm to appellant from any deficiency which may have existed in this pleading.

■ Point five is similar to point four and relates to an exception to the same pleading. It specifically objects to such pleading because it does not allege that appellant knew of the contract made by Smith.

Since this case was submitted to the jury on the theory of agency and not estoppel, we hold that error, if any, in overruling this exception was harmless.

We quote appellant's point six:

"The Court erred in granting Plaintiff's Motion for Judgment for the reason that there is no evidence that Smith had any authority to bind the Defendant to pay the debt of another party, and the Plaintiff was under a duty to determine the extent of the authority of the alleged agent Smith, and the great preponderance of the credible evidence is that Plaintiff made no attempt to determine the authority of

Smith, or the ownership of other interests in the Taylor County oil leases, and further such action by the Court is a violation of the statute of frauds."

Under this point appellant states that appellee waited three and a half years before advising him of the contract made by Smith; also that he, appellee, tried to collect this account from Reiser and Barrell, and that Reiser had paid him $70,000.

Reiser did not own an interest in the leases in suit. The $70,000 payment by Reiser to appellee was not relevant to this suit.

 Under the custom prevalent in the oil business and under the evidence, appellant by becoming operator of the leases did not, as to appellee, agree to pay the debts of other interested owners. As operator, the debts, operating expenses, were his. The statute of frauds was not violated.

 We are aware of the rule that agency cannot be established by the out of court admissions of the agent. There are some admissions of Smith in the record. We do not consider these admissions for the purpose of establishing Smith as the agent of appellant, but such agency being otherwise established we do consider such admissions as being binding on appellant.

We have fully set out the evidence and it is our opinion that the material findings of the jury are amply supported by the evidence.

Point seven is that since only the sum of $262.50 is not barred by limitation and is recoverable that an allowance of $400 attorney's fee is excessive. We agree, and find the excess to be $300. If appellee will remit this amount within ten days, the judgment will be reformed so as to allow recovery of $262.50 with interest at 6% per annum from February 1, 1955, and $100 attorney's fees; otherwise this cause will

be reversed and remanded with instructions to enter judgment for $262.50 and interest as indicated and reasonable attorney's fees to be found by the Trial Court.

Costs of appeal are assessed against appellee.

Reformed and affirmed on condition.

### After Remittitur

The remittitur called for in our original opinion having been filed by appellee, the judgment of the Trial Court is reformed as indicated in such opinion and as reformed is affirmed.

 Since appellant materially benefited by his appeal, we adhere to our ruling assessing costs of appeal against appellee. Rule 139, T.R.C.P.