**CONTINENTAL CASUALTY COMPANY and Transcontinental Technical Services, Inc. Plaintiffs,**

v.

**DR PEPPER BOTTLING COMPANY OF TEXAS, INC. and Dr Pepper/Seven Up Bottling Group, L.P., Defendants.**

No. 3:03–CV–1207–BH.

United States District Court, N.D. Texas, Dallas Division.

Feb. 9, 2006.

See also 2005 WL 440395.

John C. Wander, Vinson & Elkins, Dallas, TX, Samuel J. Thomas, Bressler Amery & Ross, Florham Park, NJ, Angela M. Scafuri, Bressler Amery & Ross, Morristown, NJ, for Plaintiffs.

Steven N. Williams, Slater & Matsil, Bruce L. Dean, William E. Reid, Reid & Associates, Dallas, TX, for Defendants.

## ORDER

RAMIREZ, United States Magistrate Judge.

Pursuant to the consent of the parties and the District Court's *Order of Reassignment*, dated and filed December 7, 2004, this matter was transferred to the undersigned United States Magistrate Judge for the conduct of all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c). The following pleadings are presently before the Court:

(1) *Defendants Dr Pepper Bottling Company of Texas, Inc. and Dr Pepper/Seven Up Bottling Group, L.P.'s Second Motion for Summary Judgment* ("MSJ"), filed October 18, 2005;

(2) *Defendants' Brief in Support of its Second Motion for Summary Judgment to Dismiss Plaintiffs' Remaining Claims* ("MSJ Br."), filed October 18, 2005;

(3) *Plaintiffs Continental Casualty Company and Transcontinental Technical Services, Inc.'s Response to Defendants' Second Motion for Summary Judgment to Dismiss Plaintiff's Remaining Claims* ("Resp."); filed November 7, 2005;

(4) *Plaintiffs Continental Casualty Company and Transcontinental Technical Services, Inc.'s Memorandum of Law in Opposition to Defendants' Second Motion for Summary Judgment to Dismiss Plaintiff's Remaining Claims* ("Resp.Br."); filed November 7, 2005;

(5) *Defendants' Reply Brief in Support of Defendants' Second Motion for*

*Summary Judgment* ("Reply"), filed November 28, 2005;

(6) *Defendants' Motion to Strike Affidavit of Daniel Peterson and Brief in Support,* filed November 28, 2005;

(7) *Plaintiffs Continental Casualty Company and Transcontinental Technical Services, Inc.'s Response to Defendants' Motion to Strike Affidavit of Daniel Peterson,* filed December 13, 2005;

(8) *Defendants Motion to Strike Second Affidavit of Daniel Peterson and Brief in Support,* filed December 28, 2005; and

(9) *Plaintiffs Continental Casualty Company and Transcontinental Technical Services, Inc.'s Response to Defendants' Second Motion to Strike Affidavit of Daniel Peterson,* filed January 18, 2006.

Having reviewed the pertinent pleadings and the evidence submitted therewith, the Court concludes that *Defendants Dr Pepper Bottling Company of Texas, Inc. and Dr Pepper/Seven Up Bottling Group, L.P.'s Motion for Summary Judgment* should be **GRANTED**, in part and **DENIED**, in part. Additionally, *Defendants' Motion to Strike Affidavit of Daniel Peterson* and *Defendants' Motion to Strike Affidavit of Daniel Peterson* should be **DENIED as moot**.

## I. BACKGROUND

This action arises out of four contracts between Plaintiffs Continental Casualty Company and Transcontinental Technical Services, Inc. (collectively "CNA") and Defendants Dr Pepper Bottling Company of Texas, Inc. and Dr Pepper/Seven Up Bottling Group, L.P. (collectively "Dr Pepper") for the issuance of insurance policies and servicing of claims submitted under the policies.

On or about April 4, 1996, CNA issued Dr Pepper insurance policies which were to be effective from March 15, 1996 through March 15, 1997 ("1996 Policies"). (MSJ Appx. Tab 1 Exh. B.) On or about April 15, 1996, the parties entered into a Claim Service Agreement for Self–Insured Employers ("1996 Service Agreement") wherein CNA agreed to provide administrative and adjusting services for claims under the 1996 Policies. (MSJ Appx. Tab 1 Exh. A.) The 1996 Service Agreement authorized CNA to pay claims up to the amount of $10,000 on behalf of Dr Pepper without prior approval. (MSJ Appx. Tab 1 Exh. A at 50, 57.)

On or about April 4, 1997, CNA issued Dr Pepper insurance policies which were to be effective from March 15, 1997 through March 15, 1998 ("1997 Policies"). (MSJ Appx. Tab 1 Exh. D.) On or about April 16, 1997, the parties entered into a Claim Service Agreement for Self–Insured Employers ("1997 Service Agreement") wherein CNA agreed to provide administrative and adjusting services for claims under the 1997 Policies through a servicing company named Servco. (MSJ Appx. Tab 1 Exh. C; Resp. Appx. Tab 1 Exh. A at 20.) CNA was to bill Dr Pepper monthly for paid losses, service fees, and taxes for claims handled by CNA on its behalf. (MSJ Appx. Tab 1 Exh. C at 59.) The 1997 Service Agreement was effective March 15, 1997 and was to terminate at the election of one of the parties. (MSJ Appx. Tab 1 Exh. C at 52–53.) However, Dr Pepper could elect to have CNA continue to administer and adjust claims reported prior to the effective date of termination. *Id.*

Starting in April 1997, servicing of claims under the 1997 Service Agreement was provided by a servicing company named RSKCo. (MSJ Appx. Tab 1 Exh. H at 107, 129, 144, 156, 203.)

On July 1, 1997, Dr Pepper returned the 1997 Policies for cancellation effective on that date. (MSJ Appx. Tab 1 Exh. E.) CNA completed final audits of the 1996 Policies and 1997 Policies on November 3, 1997. (MSJ Appx. Tab 1 Exh. F.)

In mid–2000, CNA learned that no bills had been sent to Dr Pepper for services rendered under the 1997 Service Agreement after cancellation of the 1997 Policies. (MSJ Appx. Tab 1 Exh. I.) On July 12, 2000, CNA notified Dr Pepper via letter of the error and requested payment. *Id.* The July 12, 2000 letter stated that invoices for services provided under the 1997 Service Agreement would be sent sometime thereafter from the home office. *Id.* CNA subsequently sent Dr Pepper invoices, which were dated January 21, 2000,[1] for services provided by CNA on Dr Pepper's behalf as early as the period April 1, 1997 through May 1, 1997. (MSJ Appx Tab 1 Exh. H at 107, 129, 144, 156, 166, 181, 193, 203, 214, 225, 235, 245, 256, 267, 277.) On November 1, 2000, CNA employee Jane Schultz ("Schultz") spoke with Thomas J. Taszarek ("Taszarek"), Dr Pepper's Executive Vice President, about the unpaid premiums and bills. (MSJ Appx. Tab 2 at 591–92.) Taszarek stated that he believed no monies were owed by Dr Pepper. *Id.*

On November 19, 2001, CNA made a payment of $30,000 under the 1996 Service Agreement on Dr Pepper's behalf. (Resp. Appx. Tab 2 Exh. C at 56.) Dr Pepper did not reimburse CNA for this amount.

On September 20, 2002, Kathleen Swetlik, CNA's Account Manager for Legal Collections, spoke with Taszarek regarding the amounts due under the 1997 Service Agreement. (MSJ Appx. Tab 2 at 589–88, 590–91.) Taszarek again stated his belief that no amount was owed to CNA under that agreement but promised to review the supporting documentation and, subject to that review, pay any amount he believed to be owed. *Id.* Dr Pepper made no payments on the amounts billed under the 1997 Service Agreement.

On May 29, 2003, CNA filed suit against Dr Pepper alleging breach of contract, account stated, and unjust enrichment in connection the 1997 Policies and the 1996 and 1997 Service Agreements. (Compl. at 2–5.) On February 23, 2005, this Court granted partial summary judgment to Dr Pepper on CNA's claims pertaining to the 1997 Policies based on the running of the applicable statutes of limitations. On October 18, 2005, Dr Pepper filed the instant motion for summary judgement, seeking summary judgment on CNA's remaining claims of unjust enrichment, account stated, and breach of contract pertaining to the 1996 and 1997 Service Agreements.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant makes

---

1. Because CNA does not allege that it became aware if its failure to invoice Dr Pepper under the 1997 Service Agreement before mid–2000, it appears that the invoices sent after July 2000 were back-dated. Regardless of this discrepancy, it appears "undisputed that no entity billed Dr Pepper for any sums under the 1997 CSA until July 2000", (MSJ Br. at 19), and that Dr Pepper was first informed of CNA's claims via the July 12, 2000 letter, ( ).

such a showing by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corporation v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. FED. R. CIV. P. 56(c).

"With respect to issues on which the movant carries the ultimate burden of persuasion, evidence must be adduced supporting each element of the defense and demonstrating the lack of any genuine issue of material fact with regard thereto." *Terrebonne Parish School Bd. v. Mobil Oil Corp.,* 310 F.3d 870, 877 (5th Cir.2002) (citing *Rushing v. Kansas City So. Ry. Co.,* 185 F.3d 496, 505 (5th Cir.1999)). Where the opposing party bears the burden of proof at trial, the moving party need not submit evidence to properly support its motion but need only point out the absence of evidence supporting the essential elements of the opposing party's case. *See Saunders v. Michelin Tire Corp.,* 942 F.2d 299, 301 (5th Cir.1991).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex,* 477 U.S. at 323–24, 106 S.Ct. 2548. To carry this burden, the "opponent must do more than simply show . . . some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

"If the non-movant fails to present facts sufficient to support an essential element of his claim, summary judgment is appropriate." *Vela v. City of Houston,* 276 F.3d 659, 666 (5th Cir.2001).

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (*citing Adickes v. S.H. Kress & Company,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden. *Little v. Liquid Air Corporation,* 37 F.3d 1069, 1075 (5th Cir.1994); *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548.

## III. ANALYSIS

Dr Pepper contends that it is entitled to summary judgment on CNA's remaining claims of unjust enrichment, account stated, and breach of contract. CNA asserts that there remain genuine issues of material fact pertaining to all claims.

### A. Claim for Unjust Enrichment

Dr Pepper asserts that the statute of limitations has run on CNA's unjust enrichment claim. (MSJ Br. at 19–20.) CNA acknowledges that the statute of limitations has run with regard to this claim. (Resp. Br. at 15, n. 4.)

▮▮▮ In Texas, an action for unjust enrichment is subject to a two-year statute of limitations.[2] *Mobil Producing Texas &*

2. The parties agree that the causes of action in this case are governed by Texas statutes of

*New Mexico, Inc. v. Cantor*, 93 S.W.3d 916, 919 (Tex.App.—Corpus Christi 2002) (citing *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 885 (Tex.1998)) and Tex. Civ. Prac. & Rem.Code § 16.003. In determining when a claim for unjust enrichment accrues, Texas follows the "legal injury" test. *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 410 (5th Cir.2004). That test provides that "a cause of action generally accrues, and the statute of limitations begins to run, when facts come into existence that authorize a claimant to seek a judicial remedy." *Id.* (quoting *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex.1998)). The fact that the injury is not discovered until later does not toll the running of the limitations period. *Id.* at 410, n. 16.

In this case, CNA acknowledges that the last possible date its cause of action for unjust enrichment could have accrued was February 5, 2002. Because this case was filed more than two years later, on May 29, 2003, there are no genuine material fact issues pertaining to the running of the statute of limitations. Accordingly, Dr Pepper's motion for summary judgment on CNA's claim of unjust enrichment is **GRANTED**.

## B. Claim for Account Stated

Dr Pepper asserts that it is entitled to summary judgment on CNA's claim for account stated because Dr Pepper never agreed to pay the amount sought, an essential element of a claim for account stated. (MSJ Br. at 10–12.) CNA argues that Dr Pepper's silence as to the amount billed was acknowledgment of the debt and constituted assent. (Resp. Br. at 14.)

■ "The essential elements of an 'account stated' are transactions between the parties [which] give rise to an indebtedness of one to the other; an agreement, express or implied, between the parties fixing the amount due; and a promise, express or implied, by the one to be charged, to pay such indebtedness." *Arnold D. Kamen & Co. v. Young*, 466 S.W.2d 381, 388 (Tex.Civ.App.—Dallas, 1971) (citing *Central Nat. Bank of San Angelo v. Cox*, 96 S.W.2d 746 (Tex.Civ. App.—Austin, 1936)). There is no doubt in this case that CNA performed services under the 1997 Service Agreement and paid claims on behalf of Dr Pepper, which gave rise to an indebtedness on the part of Dr Pepper. At issue is whether the parties agreed to the amount due and whether Dr Pepper promised to pay.

On July 12, 2000, CNA notified Dr Pepper that monthly invoices for services performed under the 1997 Service Agreement had not been issued and that a total of $293,990 was due for paid losses, claims handling charges, taxes, and expenses. (MSJ Appx. Tab 1 Exh. I at 585.). A series of invoices were subsequently sent to Dr Pepper seeking reimbursement in the amount of $372,677.00 for paid losses, claims handling charges, taxes, and expenses. (MSJ. Appx. Tab 1 Exh. G at 105.) Dr Pepper's executive Vice President, Taszarek, asserted that someone in Dr Pepper's employ contacted CNA and contested the amount of the invoices a few days after receiving them. (MSJ Appx. Tab 1 at 4.) Taszarek spoke with CNA employee Schultz on November 1, 2000, and with CNA employee Kathleen Swetlik ("Swetlik") on September 20, 2002, and he disputed the amount of the invoices. (MSJ Appx. Tab 2 at 590–91, 592, 593.) In his conversation with Swetlik, Taszarek stated that although he believed that Dr Pepper did not owe any money to CNA, if funds were owed, Dr Pepper would pay the

limitations.

amount due. (MSJ Appx. Tab 2 at 591.) No representative of Dr Pepper agreed in writing to pay the amount sought by CNA. (MSJ Appx. Tab 2 at 594.)

■ Approval of an account can be inferred by a party's silence if the account is rendered and retained without objection for a reasonable time after full opportunity to object. *Eastern Development and Investment Corp. v. City of San Antonio,* 557 S.W.2d 823, 825 (Tex.Civ.App.—San Antonio, 1977) (citing *Peurifoy v. Hood Rubber Products Co.,* 59 S.W.2d 428, 430 (Tex.Civ. App.—Eastland 1933)). In *Eastern Development and Investment Corp. v. City of San Antonio,* faced with impending termination of services, the defendant requested an accounting from the plaintiff, the plaintiff mailed final bills to the defendant, and the defendant did not make any communication to the plaintiff disputing the amount listed on the bills. 557 S.W.2d at 825. The court found that the fact that the defendant retained the bill for almost two months without objection raised the inference of approval of the bill. *Id.*

■ The instant case is distinguishable. Although there is no written record of any protest by Dr Pepper of the amount sought by CNA, the evidence provided by CNA's own employee clearly indicates that Dr Pepper did not agree that it owed CNA any amount; it merely agreed to review the invoices and to pay any amounts it believed it owed after review of CNA's invoices. (MSJ Appx. Tab 2 at 590–91, 592, 593; Resp. Appx. Exh. B.) Thus Dr Pepper did not agree that the amount requested was correct and owing and it did not promise to pay a set amount. *Id.* In fact, Swetlik acknowledged that Taszarek orally disputed the amount to Schultz on November 1, 2000, and again to Swetlik herself on September 20, 2002. *Id.* Because there is no evidence showing an agreement, either express or implied, be-

tween the parties that any amount was due, much less that a specific amount was due, and there is no evidence showing a promise to pay such amount, Dr Pepper has pointed to an absence of evidence to support an element of CNA's claim. Accordingly, Dr Pepper's motion for summary judgment on CNA's claim of account stated is **GRANTED**.

**C. Claim for Breach of 1997 Service Agreement**

Dr Pepper claims it is entitled to summary judgment on CNA's claim for breach of the 1997 Service Agreement due to the running of the four year statute of limitations. Dr Pepper asserts that CNA's claim for breach of the 1997 Service Agreement accrued on July 10, 1997, the date CNA should have last billed Dr Pepper. (MSJ Br. at 18–20.) Dr Pepper also argues that the statute of limitations has run on CNA's breach of contract claim because more than four years have passed since the date CNA was obligated to invoice Dr Pepper for the services rendered. (MSJ Br. at 22–26.) In the alternative, Dr Pepper claims CNA intentionally relinquished its right to payment and thereby waived its right to sue for breach of contract. (MSJ Br. at 20–22.) Lastly, Dr Pepper argues that CNA cannot recover because recovery is barred by the anti-assignment clause of the parties' contract. (MSJ Br. at 26–29.)

*1. Statute of Limitations*

■ Under Texas law, "[l]imitation of actions is an affirmative defense that must be specifically pleaded and proved." *Intermedics, Inc. v. Grady,* 683 S.W.2d 842, 845 (Tex.App.—Houston [1st Dist.] 1984, no writ). The party asserting the defense of statute of limitations bears the burden of proof on the issue. *Ingersoll–Rand Co. v. Valero Energy Corp.,* 997 S.W.2d 203,

211 (Tex.1999). In addition to establishing the applicability of the statute of limitations, the party must prove when the opponent's cause of action accrued in order to demonstrate the bar of limitations. *See id.; Intermedics,* 683 S.W.2d at 845. Where the facts are undisputed, the defendant may establish that the plaintiff's claim is barred by the statute of limitations as a matter of law. *See Intermedics, Inc.,* 683 S.W.2d at 845. However, where reasonable minds may differ as to the inferences to be drawn from the evidence, this becomes a question of fact to be determined by the trier of the fact from all the facts and circumstances in evidence. *See id; Metal Structures Corp. v. Plains Textiles, Inc.,* 470 S.W.2d 93, 99 (Tex.Civ. App.—Amarillo 1971, writ ref'd n.r.e.).

▮▮▮▮ Pursuant to Tex. Civ. Prac. & Rem.Code § 16.051, the statute of limitations for a cause of action arising out of breach of contract is four years. Therefore, a breach of contract claim must be brought no later than four years after the day the claim accrues. *Stine v. Stewart,* 80 S.W.3d 586, 592 (Tex.2002). Determining when a cause of action accrues is a question of law, not fact. *Holy Cross Church of God in Christ v. Wolf,* 44 S.W.3d 562, 567 (Tex.2001). Absent special circumstances, a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury or the extent of actual damage is not discovered until later.[3] *S.V. v. R.V.,* 933 S.W.2d 1, 4 (Tex.1996).

### a. *Full performance*

Dr Pepper asserts that the 1997 Service Agreement was a continuing contract for performance and that the contract was fully performed on July 1, 1997, the date Dr Pepper returned the 1997 Policies for cancellation. (MSJ Br. at 19.) Accordingly, Dr Pepper claims that CNA's cause of action for breach of the 1997 Service Agreement accrued on that date. *Id.* CNA responds that the issue of whether CNA and Dr Pepper ceased dealings on that date presents a genuine issue of material fact. (Resp. Br. at 16.)

▮▮▮▮ In a continuing contract for performance, the limitations period usually commences once the contract is fully performed. *Intermedics, Inc. v. Grady,* 683 S.W.2d 842, 845 (Tex.App.—Houston [1st Dist.] 1984). The 1997 Service Agreement was effective March 15, 1997, and was to terminate at the election of one of the parties. (MSJ Appx. Tab 1 Exh. C at 52–53.) Upon termination of the 1997 Service Agreement on July 1, 1997, Dr Pepper could have elected to have CNA continue to administer and adjust claims reported prior to the effective date of termination. *Id.* Dr Pepper has not met its burden to show that it did not elect to have CNA continue servicing pre-existing claims under the 1997 Service Agreement. Indeed, the record contains no evidence regarding how an election was to be made. Dr Pepper does not argue that CNA's obligation to continue servicing the remaining pre-existing claims under the 1997 Service Agreement ceased on the date Dr Pepper cancelled the contracts. CNA has pointed

---

**3.** Accrual of a cause of action is deferred in two types of situations, neither of which is present in this case. In one type, those involving allegations of fraud or fraudulent concealment, accrual is deferred because a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run. The other type, in which the discovery rule applies, comprises those cases in which 'the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable.' *S.V. v. R.V.,* 933 S.W.2d 1, 6 (Tex.1996) (quoting *Computer Associates International, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 456 (Tex.1996)).

to evidence demonstrating that it continued to service existing claims under the contract. Dr Pepper does not claim it was unaware of the claims CNA continued to service pursuant to the 1997 Service agreement. For these reasons, the Court concludes that Dr Pepper did not meet its burden to prove that there is no genuine issue of material fact for trial concerning when the 1997 Service Agreement was fully performed.

### b. *Date invoices should have been sent*

In the alternative, Dr Pepper asserts that CNA's cause of action for breach of the 1997 Service Agreement accrued on the dates invoices should have been sent to Dr Pepper. (MSJ Br. at 22–26.) CNA responds that because Dr Pepper had no affirmative payment obligation until invoices were received, the statute of limitations did not begin to run until the date CNA demanded payment. (Resp. Br. at 19–21.)

■■■■ A cause of action for breach of contract is generally regarded as accruing when the contract is breached or when the claimant has notice of facts sufficient to place him on notice of the breach. *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex.2002) (citing *Smith v. Fairbanks, Morse & Co.*, 101 Tex. 24, 102 S.W. 908, 909 (1907)). As noted above, in a continuing contract for performance, the limitations period usually commences once the contract is fully performed. *Intermedics, Inc. v. Grady*, 683 S.W.2d 842, 845 (Tex.App.—Houston [1st Dist.] 1984, no writ). However, if the terms of a continuing contract for performance provide for periodic payments during the course of the contract, a cause of action for each payment may arise at the end

of each period, even though the contract has not been completed. *Id.*

■■■■ In a typical suit for breach of a promise to pay, a party's cause of action arises when a demand for payment has been made and refused. *Intermedics, Inc.*, 683 S.W.2d at 845. However, such demand must be made within a reasonable time. *Irwin v. Prestressed Structures, Inc.*, 471 S.W.2d 865, 868 (Tex.Civ.App.-Eastland 1971, writ ref'd n.r.e.). "Where demand is a condition precedent to a suit, the injured party may not, by failing to make demand, postpone the running of the statute until he decides to make a demand. Where demand is a prerequisite to a right of action, the injured party must make the demand within a reasonable time after it may lawfully be made. The reasonableness of the delay is normally a fact question, but in the absence of mitigating circumstances, the law will ordinarily consider a reasonable time as being coincident with the running of the statute, and an action will be barred if a demand is not made within that period." *Stevens v. State Farm Fire and Cas. Co.*, 929 S.W.2d 665, 671 (Tex.App.Texarkana, 1996) (internal citations omitted). *See also Intermedics, Inc.*, 683 S.W.2d at 846; *U.S. Restaurant Properties Operating, L.P. v. Burger King Corp.*, 2003 WL 21448389, *5 (N.D.Tex. June 16, 2003).

■■■ Here, the parties' contract provided that CNA would bill Dr Pepper for loss payments on a monthly basis.[4] It provided that "[CNA] WILL MAKE LOSS PAYMENTS ON BEHALF OF [Dr Pepper] AND WILL BILL [Dr Pepper] FOR THESE ON A MONTHLY BASIS. PAYMENTS SHALL BE PAYABLE WITHIN 10 DAYS OF THE BILLING DATE"

---

**4.** Because Dr Pepper's motion does not assert that CNA breached its duty under the contract by failing to send invoices on a monthly basis, thereby relieving Dr Pepper of its duty to pay, the Court does not consider this issue.

508

(MSJ Appx. Tab 1 at 59.) An Account Manager in CNA's Legal Collections Department, Daniel Peterson ("Peterson"), confirmed that under the 1997 Service Agreement Dr Pepper should have been billed monthly for paid loss and loss adjustment expenses, claim handling fees, and sales tax. (MSJ Appx. Tab 3 at 600, 604.) Peterson knew of no reason to explain CNA's failure to bill Dr Pepper on a monthly basis for paid losses as required under the 1997 Service Agreement. (MSJ Appx. Tab 3 at 607.)

According to the plain language of the parties' contract, CNA was to make demand for payment in order to give rise to Dr Pepper's duty to pay. Such demand is an essential part of CNA's cause of action for breach of contract, because until Dr Pepper received invoices, it had no way to know the amount it owed. *See U.S. Restaurant Properties Operating, L.P.,* 2003 WL 21448389 at *5 (noting that until work had been completed, there was no way for the plaintiff in that case to know the precise amount of costs). CNA demanded payment from Dr Pepper on July 12, 2000. (MSJ Br. at 19; MSJ Appx Tab 1 Exh. H at 107, 129, 144, 156, 166, 181, 193, 203, 214, 225, 235, 245, 256, 267, 277; Exh, I.) The earliest date invoiced was the period April 1, 1997 through May 1, 1997. (MSJ Appx. Tab 1 Exh. H at 107.) Because demand was a condition precedent to Dr Pepper's obligation to pay, CNA was required to make demand within the applicable limitations period, on or before May 1, 2001, in order for its delay in demanding payment to be considered reasonable. CNA's demand for payment on July 12, 2000, was within the four year limitations period, making its submission untimely under the contract, but reasonable according to the case law. July 12, 2000, then, commenced the limitations period for filing suit. *See Stevens,* 929 S.W.2d at 671–72

(concluding that the limitations period began on the date of demand); *U.S. Restaurant Properties Operating, L.P.,* 2003 WL 21448389 at *5 (same). This lawsuit was filed on May 29, 2003, less than four years from the date the limitations period commenced. Therefore, the Court finds that Dr Pepper did not meet its burden to prove the applicability of the statute of limitations on Dr Pepper's breach of contract claims brought under the 1997 Service Agreement.

### 2. *Waiver*

Dr Pepper claims it is entitled to summary judgment on CNA's breach of contract claims brought under the 1997 Service Agreement because CNA waived such claims by intentionally relinquishing the right to payment. (MSJ Br. at 20–22.) CNA responds that its failure to bill Dr Pepper for paid losses under the 1997 Service Agreement was not intentional, but an oversight. (Resp. at 17–18.)

Waiver is an affirmative defense, requiring a party to specifically plead and prove it. *Cal–Tex Lumber Co., Inc. v. Owens Handle Co., Inc.,* 989 S.W.2d 802, 812 (Tex.App.Tyler, 1999). "Waiver has been defined as an intentional relinquishment of a known right or intentional conduct inconsistent with claiming it." *U.S. Fidelity & Guaranty Co. v. Bimco Iron & Metal Corp.,* 464 S.W.2d 353, 357 (Tex.1971). Waiver may be either express or indicated by conduct that is inconsistent with an intent to claim the right. *Cal–Tex. Lumber Co., Inc.,* 989 S.W.2d at 812. "A party's intention is a primary factor in determining questions of waiver, and in the absence of a clear intent expressed in words, acts, or conduct, waiver will be implied only to prevent fraud or inequitable consequences." *Id.* (citing *Stowers v. Harper,* 376 S.W.2d 34, 40 (Tex.Civ.App.—Tyler 1964, ref. n.r.e.)).

In this case, CNA failed to send invoices to Dr Pepper for paid losses and services provided under the 1997 Service Agreement for over three years. Dr Pepper notes CNA's obligation under the contract to send monthly bills and states that "CNA did not simply forget to bill hundreds of thousands of dollars....". (MSJ Br. at 20–21.) Rather, Dr Pepper claims that CNA did not send invoices because the contract between the parties had terminated. (MSJ Br. at 21.) However, Dr Pepper's fails to point to evidence in the record of CNA's intent to waive its rights under the 1997 Service Agreement. Interestingly, Dr Pepper does not argue that CNA's obligation to continue servicing the remaining pre-existing claims under the 1997 Service Agreement ceased on the date Dr Pepper cancelled the contracts. In fact, the record is replete with evidence showing that the during the three years after the 1997 Service Agreement was terminated, CNA continued to perform its obligations under the agreement and to pay losses on Dr Pepper's behalf. (MSJ Appx. Tab 1 Exh. H.) As noted above, Dr Pepper does not claim that it was unaware that claims subject to the 1997 Service Agreement were in existence. Dr Pepper does not claim it was unaware that CNA continued to service such claims. The contention that CNA serviced claims and paid losses on Dr Pepper's behalf with no expectation of return is not supported by the record. Accordingly, the Court determines that Dr Pepper did not meet its burden to prove that there is no genuine issue of material fact for trial concerning whether CNA waived its rights under the 1997 Service Agreement.

### 3. Anti–Assignment Clause

Dr Pepper asserts that CNA is not entitled to recover claim service fees sought in invoices from April 1, 1997, through May 1, 1999, because the 1997 Service Agreement provides that only Servco, not CNA or RSKCo, can incur claim service fees. (MSJ Br. at 26–29.) CNA states that there was no assignment of duties. (Resp. at 22.)

"In Texas, anti-assignment clauses are enforceable unless rendered ineffective by an applicable statute." *Texas Development Co. v. Exxon Mobil Corp.*, 119 S.W.3d 875, 880 (Tex.App.Eastland, 2003) (citing *Island Recreational Development Corporation v. Republic of Texas Savings Association*, 710 S.W.2d 551, 553 (Tex. 1986), *Reef v. Mills Novelty Co.*, 126 Tex. 380, 89 S.W.2d 210, 211 (1936), *Texas Farmers Insurance Company v. Gerdes*, 880 S.W.2d 215 (Tex.App.—Fort Worth 1994, writ den'd), *Cloughly v. NBC Bank–Seguin, N.A.*, 773 S.W.2d 652, 655 (Tex. App.—San Antonio 1989, writ den'd)).

The 1997 Service Agreement provides.

NO ASSIGNMENTS; SUCCESSORS. EXCEPT FOR THE RIGHT TO SUBCONTRACT CERTAIN DUTIES AS PROVIDED BY SECTION 2(VII) AND 2 (VIII) AND THE RIGHT OF SERVCO TO DELEGATE ITS DUTIES UNDER THIS AGREEMENT TO CONTINENTAL CASUALTY COMPANY, THE RIGHTS AND DUTIES OF SERVCO PURSUANT TO THIS AGREEMENT MAY NOT BE ASSIGNED, DELEGATED OR TRANSFERRED WITHOUT THE PRIOR WRITTEN CONSENT OF THE CLIENT, AND ANY ATTEMPTED ASSIGNMENT, DELEGATION OR TRANSFER WITHOUT SUCH CONSENT SHALL BE VOID.

(MSJ Appx. Tab 1 Exh. C at 55.) The invoices at issue indicate that claims services were provided by RSKCo Services, Inc. and seek claim handling fees for that

company. (MSJ Appx. Tab 1 Exh. H at 107, 129, 144, 156, 203.)

■ Dr Pepper asserts that the listing of the entity providing claims services as RSKCo, rather than Servco, is clear indication that Servco assigned its duties under the contract to RSKCo in violation of the anti-assignment clause. (MSJ Br. at 29.) CNA does not dispute the fact that the name of the service provider on the subject invoices is RSKCo, rather than Servco. Rather, CNA states that the change from Servco to RSKCo was merely a name change and not an assignment. (Resp. at 22.) A mere name change has no effect on a corporation's identity or its property rights or liabilities. *Dirt Arresters, Inc. v. H.C. Rental Properties, Inc.,* 2000 WL 145095, *1 (Tex.App.—Dallas, Feb.10, 2000) (citing TEX. BUS. CORP. ACT ANN. art. 4.06 (Vernon 1980); *Nelson v. Detroit & Sec. Trust Co.,* 56 S.W.2d 860, 862 (Tex. Com.App.1933); *Drennan v. Community Health Inv. Corp.,* 905 S.W.2d 811, 818 (Tex.App.—Amarillo 1995, writ denied)). Neither party points to any record evidence which sheds light on whether the change from Servco to RSKCo was an assignment or a name change.[5] Breach of the anti-assignment clause is an affirmative defense, and Dr Pepper therefore bears the burden to point to evidence supporting each element of the defense and demonstrating the lack of any genuine issue of material fact with regard thereto. *See Terrebonne Parish School Bd. v. Mobil Oil Corp.,* 310 F.3d 870, 877 (5th Cir. 2002). While it is clear that the contract provides that servicing was to be provided by an entity named Servco and the subject invoices indicate servicing by an entity named RSKCo, these facts alone are not enough to meet Dr Pepper's summary judgment burden. Factual inferences from the evidence are viewed in a light most favorable to the party opposing the motion for summary judgment and all reasonable doubts about the facts are resolved in favor of the nonmoving party. *Id.* (citing *Boston Old Colony Ins. v. Tiner Associates Inc.,* 288 F.3d 222, 227 (5th Cir. 2002)). The evidence cited by Dr Pepper does not show an absence of a genuine issue of material fact as to the meaning of the name on the invoices; i.e. name change or assignment. For this reason, the Court concludes that Dr Pepper is not entitled to summary judgment on this issue.

For the foregoing reasons, the Court finds that Dr Pepper is not entitled to summary judgment on CNA's claim for breach of the 1997 Service Agreement. Accordingly, Dr Pepper's motion for summary judgment on CNA's claim of breach of the 1997 Service Agreement is **DENIED**.

### D. Claim for Breach of the 1996 Service Agreement

■ Dr Pepper claims that CNA may not recover charges sought for a payment made under the 1996 Service Agreement because CNA breached the agreement by failing to seek Dr Pepper's approval prior to making the payment. (MSJ Br. at 29–30.) CNA asserts that Dr Pepper did consent to the payment. (Resp. at 23.)

The 1996 Service Agreement provides: "NO OFFER, SETTLEMENT OR PAYMENT SHALL BE MADE WITHOUT PRIOR CONSULTATION WITH THE CLIENT IF REQUIRED UNDER

---

5. Peterson testified that "Servco became RSKCo." (Resp. Appx. Tab 1 Exh. A at 21.) However, Peterson was unable to testify how the change took place or whether there was an assignment of assets. (Resp. Appx. Exh. A at 21–22.) Peterson did provide the name of the person to ask about the manner in which Servco became RSKCo, but there is no evidence indicating that person was asked to provide such information to either party. *Id.*

SCHEDULE I." (MSJ Appx. Tab 1 Exh. C at 50.) Schedule I states that CNA has claim settlement authority of $10,000. (MSJ Appx. Tab 1 Exh. C at 57.) Additionally, the contract requires that:

> IN THE EVENT THAT SERVCO MUST MAKE A SINGLE PAYMENT OF $10,000 OR MORE, SERVCO WILL NOTIFY THE CLIENT OF THE PAYMENT AND REQUEST IMMEDIATE REIMBURSEMENT OF THE PAYMENT. THE CLIENT AGREES TO PAY SERVCO THESE FUNDS WITH [sic] 2 WORKING DAYS.

(MSJ Appx. Tab 1 Exh. A at 18.) Peterson acknowledged that CNA was required to obtain Dr Pepper's consent prior to paying more than $10,000 for an individual claim. (MSJ Appx. Tab 3 at 599.)

At issue is a payment by CNA of $30,000 made on November 19, 2001, to an individual claimant on behalf of Dr Pepper. (MSJ Br. at 29–30.) Evidence in the record shows that CNA became aware of the subject claim on March 13, 1997, and notified Dr Pepper. (Resp. Appx. Tab 2 Exh. C at 74.) The matter went to trial on October 4, 2000, and a representative of Dr Pepper, Mark Devlin ("Devlin"), attended the trial. (Resp. Appx. Tab 2 Exh. C at 59–60.) At trial, the claimant was awarded $80,000. *Id.* The case was mediated on March 29, 2001, and Devlin attended the mediation. (Resp. Appx. Tab 2 Exh. C at 57.) At the mediation, Devlin offered to settle the matter for $20,000. *Id.* On November 19, 2001, CNA consulted with Devlin and, with his agreement, offered to settle the case for $30,000. *Id.* The claimant accepted the offer and a check was issued on that same date. (Resp. Appx. Tab 2 Exh. C at 56.)

Although Dr Pepper claims it did not receive notice or give consent prior to the settlement of the claim, CNA has produced evidence that Devlin was informed and did give consent. Dr Pepper does not provide evidence indicating that Devlin was not authorized to consent on its behalf. Accordingly, the Court concludes that there is a genuine issue of material fact concerning whether CNA provided notice to Dr Pepper of the settlement and whether Dr Pepper consented to payment. Dr Pepper's motion for summary judgment on CNA's claim of breach of the 1996 Service Agreement is therefore **DENIED**.

## IV. MOTIONS TO STRIKE AFFIDAVITS

 Dr Pepper filed a motion to strike the affidavit of Daniel Peterson, which was submitted as evidence in support of CNA's response to the motion for summary judgment, and a motion to strike the second affidavit of Daniel Peterson, which was submitted as evidence in response to Dr Pepper's first motion to strike. Because in determining the motion for summary judgment the Court did not rely on any of the evidence contained in the affidavits which Dr Pepper found objectionable, the motions are denied as moot.

## V. CONCLUSION

For the foregoing reasons, the Court concludes that *Defendants Dr Pepper Bottling Company of Texas, Inc. and Dr Pepper/Seven Up Bottling Group, L.P.'s Motion for Summary Judgment* should be **GRANTED**, in part and **DENIED**, in part. It is therefore

**ORDERED** that the claims for unjust enrichment and account stated brought by Plaintiffs Continental Casualty Company and Transcontinental Technical Services, Inc. pertaining to the 1997 Policies are hereby **DISMISSED** with prejudice. Re-

maining for trial are the claims for breach of the 1996 and 1997 Service Agreements.