**AFFIRM; and Opinion Filed February 25, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-13-00711-CV

**EHRING ENTERPRISES, INC. F/K/A THALGO COSMETIC USA, INC.
AND MARINE IMPACT, INC., Appellants/Cross-Appellees
V.
RD MANAGEMENT CORPORATION, Appellee/Cross-Appellant**

**On Appeal from the 44th Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-11-04770-b**

## MEMORANDUM OPINION

Before Justices Lang-Miers and Brown[1]
Opinion by Justice Brown

This appeal involves a dispute between two distributors of French skin-care products. The distributor for the Western United States, RD Management Corporation, sued the distributor for the Eastern United States, Ehring Enterprises, Inc., alleging breach of a territorial restriction in a contract and other causes of action.[2] After a bench trial, the court found in favor of RD on its contract claim and awarded damages. In two issues on appeal, Ehring Enterprises challenges the legal and factual sufficiency of the evidence to support the court's alternative findings that a contract existed between RD and Ehring Enterprises or that RD was a third-party beneficiary to

---

[1] Justice Michael J. O'Neill was a member of the panel at the time of submission and oral argument. Due to his retirement from the Court on December 31, 2014, he did not participate in the issuance of this opinion. *See* TEX. R. APP. P. 41.1(b).

[2] RD sued appellants Ehring Enterprises and Marine Impact, Inc. The trial court concluded that Ehring Enterprises and Marine Impact were alter egos. We refer to them collectively as Ehring Enterprises.

the distribution agreement between Ehring Enterprises and the manufacturer of the products. We affirm the trial court's judgment.

Thalgo is a French manufacturer of skin-care products sold and used in spas. In the late 1990s, Guy Ehring began working for a business known as Thalgo USA, which distributed Thalgo products throughout the entire United States. In 2003, Thalgo divided the United States into two territories, each with an exclusive distributor. Dar Reiss-Depp was president of Thalgo's West Coast distributor RD, based in Texas, and Guy Ehring was president of Thalgo's East Coast distributor Ehring Enterprises, based in Florida. Reiss-Depp testified about the work involved in being a Thalgo distributor, including investing in inventory, setting up a warehouse and offices, having office staff and salespeople and trainers in the field, attending trade shows, and advertising and marketing.

RD's distribution agreement with Thalgo went into effect on April 1, 2003. In the written agreement, Thalgo designated RD as the sole and exclusive distributor of its products in a thirty-state territory generally comprised of the Western United States. The agreement prohibited RD from selling to Nordstrom and Saks Fifth Avenue spas, or to spas nearby, as distribution to those department store spas was "under the responsibility of another party." The agreement stated, "DISTRIBUTOR will not divert and will endeavour to prevent diversion of all THALGO products destined for sale in the aforementioned TERRITORY to any area outside said TERRITORY, unless written consent is given by THALGO." The agreement also specified that, "THALGO binds itself to sell the PRODUCTS to be distributed in the TERRITORY only to DISTRIBUTOR and will endeavour to prevent diversion of all the THALGO products destined for sale in any area outside said territory, to the aforementioned territory." RD also agreed not to promote or offer for sale any cosmetic products competitive with Thalgo products. The

distribution agreement was valid until December 31, 2008. It was renewable for another five-year period if there was mutual consent given in writing by both Thalgo and RD.

RD's distribution agreement specifically referenced "East Coast Distributor Guy Ehring," stating that an amendment regarding legal issues with him was forthcoming. Amendment 1 to the distribution agreement stated that to protect RD from Guy Ehring's established patterns of frivolous lawsuits, if Guy Ehring or Ehring Enterprises engage in legal actions against RD or Reiss-Depp, RD reserves the right to undertake all actions it deems necessary to protect its interest and to hold Thalgo liable for the costs of these actions. RD also had the right to discontinue all operations with Thalgo should any such case not be settled within six months.

Ehring Enterprises had a similar written distribution agreement with Thalgo, also effective April 1, 2003, to be the exclusive distributor of Thalgo products in twenty states in the Eastern United States, as well as the District of Columbia, the Bahamas, and the U.S. Virgin Islands.[3] Ehring Enterprises's distribution agreement allowed it to provide Thalgo products to Nordstrom and Saks Fifth Avenue spas nationwide. Ehring Enterprises's distribution agreement contained provisions identical to those found in RD's agreement, and quoted above, regarding exclusivity. Also, the article describing Ehring Enterprises's territory contained the following provision: "Exception to this rule may be negotiated between the other Distributor(s) and Ehring Enterprises and arbitrated by THALGO in order to safeguard the interest of the growth of THALGO in the United States." In addition to this mention of other distributors, Ehring Enterprises's agreement contained an amendment which referenced RD by name. The amendment provided that neither Guy Ehring nor his company will engage in legal actions against RD or Reiss-Depp without giving prior notice to Thalgo or first discussing it with Thalgo

---

[3] Both Ehring Enterprises's and RD's distribution agreements contained an exception allowing a specific third Thalgo distributor, who catered mainly to Asian communities, to service its existing accounts.

so that an amicable settlement can be reached. Ehring Enterprises's distribution agreement was for a term of three years and was automatically renewed on April 1, 2006, for another three-year period ending March 31, 2009.

In a letter dated September 23, 2008, Thalgo's president, Jean-Claude Sirop, informed RD that its distribution agreement was not going to be automatically renewed when it expired at the end of December. Sirop wished "to renew [the] partnership on a new contractual basis, starting on January 1st 2009, on the basis of terms, conditions and objectives which will be discussed and agreed upon during [Reiss-Depp's] forthcoming visit" to France. Michel Gras, also with Thalgo, simultaneously sent Reiss-Depp an email telling her not to be "upset or discomposed" and stating that Sirop wished to formalize "all our Agreements and enforce the relevant clauses, for the sake of order. . . . When you are in France, we will discuss, as stated in the Agreement, the new yearly objectives. . . ."

In late March 2009, Sirop sent Ehring Enterprises a letter notifying it that its distribution agreement would terminate as planned on March 31, 2009. Sirop informed Ehring Enterprises that he wished "to continue our long-term collaboration under a configuration not necessarily identical to the existing one." He went on to state, "While this new configuration is prepared, with your close involvement, we will pursue the existing Contractual Agreement, all clauses remaining unchanged, for a perio[d] of 1 Year (12 months), starting April 1st 2009 and ending March 31st 2010."

In December 2008 or January 2009, Reiss-Depp went to France to meet with Thalgo representatives. She testified that RD and Thalgo were going to discuss a new business structure in the future, but in the meantime, she was told to keep doing what RD had been doing, "selling and developing the territories." When Reiss-Depp returned from France, RD conducted business as usual as a Thalgo distributor. It ordered goods from Thalgo and paid for them, and Thalgo

shipped the goods.  According to Reiss-Depp, the parties continued to operate as before with RD and Ehring Enterprises distributing Thalgo products in their respective territories.  She testified that all three parties had an agreement to abide by the same territories.  Guy Ehring testified at trial that once the term of the distribution agreements ended, anyone could sell Thalgo anywhere they wanted.  In his deposition, however, he testified that while the parties were discussing a new business entity, Ehring Enterprises continued to distribute Thalgo in the Eastern United States. Ehring further stated the territorial line did not stop until RD ran out of products.

There was evidence that over the years both RD and Ehring Enterprises sought to enforce the territorial restrictions in their respective distribution agreements.  Reiss-Depp testified that about six months after she signed her contract with Thalgo, she learned that Ehring Enterprises had sent information packs to prospective Thalgo clients in her territory.  Reiss-Depp contacted Thalgo in France, and Thalgo assured her Ehring Enterprises would stop.  In 2004, while Reiss-Depp was at a trade show, representatives from the Ritz Carlton told her that Ehring Enterprises had solicited its business for a new Ritz spa in California.  Again, Reiss-Depp contacted Michel Gras with Thalgo in France.  Gras told her he would have a conversation with Ehring Enterprises to inform them they needed to stop coming into RD's territory.  RD's lawyer sent Ehring Enterprises a letter about the situation as well.  Ehring Enterprises stopped talking to the Ritz Carlton, and RD opened an account with the Ritz Carlton and did business with them for several years.  Likewise, RD also received at least three complaints from Ehring Enterprises that RD had infringed on its territory by conducting business with spas that, although in RD's territory, were too close to a Nordstrom or Saks.[4]  One of these complaints came in the spring of 2009, after the initial period of RD's distribution agreement ended.  RD stopped selling to these spas as a result.

---

[4] The two distribution agreements differed in their descriptions of what was considered too close to a Nordstrom or Saks spa.  RD's distribution agreement prohibited it from selling to Nordstrom or Saks and from opening "a salon or spa that would be located in a mall where a

The territorial violation that forms the basis for this suit is Ehring Enterprises's sales to the T Spa at the Tulalip Resort in Washington State. Reiss-Depp was at a trade show in September 2009 when a competitor showed her pictures of Thalgo products at the T Spa. Reiss-Depp called the spa director who informed her the spa was getting Thalgo products from the Florida office. Reiss-Depp contacted Gras in France to advise him of the situation. On Gras's advice, Reiss-Depp sent Guy Ehring an email informing him that it had come to her attention that Ehring Enterprises had been supplying Thalgo products to the Tulalip Resort in RD's territory. Reiss-Depp asked for an immediate explanation of the situation, but got no response. Gras confirmed that Ehring Enterprises had supplied an account located in RD's territory and wrote that "[t]his way of doing, without you being informed, is unacceptable" and "territories have to be duly respected by both sides." Gras stated that RD was entitled to have Ehring Enterprises close that account. RD's lawyers later sent a notice of intent to sue asking Ehring Enterprises to cease and desist conducting business outside its territory.

In January 2010, Gras wrote to Reiss-Depp to propose a joint venture between her, Guy Ehring, and Thalgo in which she would have a 25% ownership. Guy Ehring would be the joint venture's managing director, and he and his partners would own 50% of the joint venture. Thalgo would own the remaining 25%. In the summer of 2010, Reiss-Depp wrote a letter of resignation to Thalgo, stating that the proposed reorganization for the United States did not fit with her vision for RD. In the fall of 2010, RD returned its remaining inventory to Thalgo.

RD eventually sued Ehring Enterprises for breach of contract, alleging Ehring Enterprises violated the territorial restriction by supplying Thalgo products to the T Spa.[5] In its operative

---

Saks or Nordstrom Spa is already operating." Ehring Enterprises's distribution agreement provided that Thalgo and its distributors agree not to market or distribute its products within a five-block radius of a Nordstrom or Saks spa that is already carrying Thalgo products.

[5] RD pleaded other causes of action against Ehring Enterprises, including tortious interference, conversion, unjust enrichment, aiding and abetting, and constructive trust. The trial court's judgment states that those claims were "not established under the facts of this case." RD also sued Thalgo, and RD and Thalgo settled before trial.

pleading, RD alleged two alternative theories regarding the basis for Ehring Enterprises's contractual obligation to it: 1) RD, Ehring Enterprises, and Thalgo were parties to a three-way implied agreement RD referred to as the "Status Quo Agreement," which included the agreement that Ehring Enterprises would sell Thalgo only in the Eastern United States; and 2) RD was a third-party beneficiary of the distribution agreement between Ehring Enterprises and Thalgo.

The trial court rendered judgment in favor of RD on its breach of contract claim. The court ordered that RD shall recover actual damages of $108,630.42 from Ehring Enterprises, plus pre- and postjudgment interest, attorney's fees, and costs. Upon Ehring Enterprises's request, the trial court made findings of fact and conclusions of law. The court's extensive findings of fact included the following: 1) the parties' express statements, conduct toward one another and Thalgo, and their course of performance and dealing gave rise to an implied-in-fact contract ("Status Quo Agreement"), which applied after the termination dates of both distribution agreements, and the terms of this agreement included a continuation of the territorial division; 2) alternatively, even if Ehring Enterprises was not a party to a Status Quo Agreement between Thalgo and RD, there was an express written agreement to extend the terms of Ehring Enterprises's distribution agreement including the territorial restrictions; 3) alternatively, Ehring Enterprises had an implied agreement with Thalgo to be its distributor in the Eastern United States; 4) RD invested time and resources into developing business in the Western territory, and the territorial restrictions in the parties' written distribution agreements, extended agreements, and Status Quo Agreement were intended to benefit and protect the other distribution; 5) there was a creditor third-party beneficiary status conferred on RD by the territorial restrictions in Ehring Enterprises's distribution agreement; and 6) Ehring Enterprises distributed Thalgo products to the T Spa from 2008 to 2012.

The court made the following conclusions of law: 1) Ehring Enterprises commenced sales to the T Spa before the initial terms of its distribution agreement had been terminated or extended; 2) the distribution agreements were effectively extended as a matter of law; 3) Ehring Enterprises violated the terms of the distribution agreement by making sales into RD's territory that were not to a Nordstrom or Saks. The court concluded alternatively that the Status Quo Agreement reflected an implied-in-fact contract between RD, Ehring Enterprises, and Thalgo, and that Ehring Enterprises breached the Status Quo Agreement with respect to the territorial restrictions.

In two issues on appeal, Ehring Enterprises challenges the legal and factual sufficiency of the evidence to support the court's alternative findings that RD was a third-party beneficiary to the distribution agreement between Ehring Enterprises and Thalgo, or that RD, Ehring Enterprises, and Thalgo formed a three-party Status Quo Agreement which Ehring Enterprises breached.

In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury verdict. *Principal Life Ins. Co. v. Revalen Dev., LLC*, 358 S.W.3d 451, 454 (Tex. App.—Dallas 2012, pet. denied). Therefore, we review a trial court's finding under the same sufficiency standards we use when determining if sufficient evidence exists to support an answer to a jury question. *Id.* A legal sufficiency challenge to the findings of fact fails if there is more than a scintilla of evidence to support the findings. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992). In reviewing a factual sufficiency challenge, we consider and weigh all of the evidence in support of and contrary to the finding and will set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

We begin by considering Ehring Enterprises's argument that the evidence is insufficient to support the court's finding that RD was a third-party beneficiary to the distribution agreement between Ehring Enterprises and Thalgo. Ehring Enterprises first argues that, after its distribution agreement expired, the only contract that could have existed was an implied-in-fact agreement, and Texas law prohibits third-party beneficiaries by implication. Ehring Enterprises further contends that the territorial restriction in its distribution agreement was not intended to benefit RD and was intended only to benefit Ehring Enterprises and Thalgo, the mutual benefits being that Thalgo granted Ehring Enterprises an exclusive territory and Ehring Enterprises would refrain from competing with Thalgo.

A third party may recover on a contract made between other parties only if the parties intended to secure a benefit to that third party, and only if the contracting parties entered into the contract directly for the third party's benefit. *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002) (citing *MCI Telecomms. Corp. v. Texas Util. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999)). A third party does not have a right to enforce a contract if it received only an incidental benefit. *Id.* at 589. However, a third-party beneficiary does not have to show that the signatories executed the contract solely to benefit it as a non-contracting party. *Id.* at 591. A court will not create a third-party beneficiary contract by implication. *Id.* Rather, an agreement must clearly and fully express an intent to confer a direct benefit to the third party. *Id.* To determine the parties' intent, courts must examine the entire agreement and give effect to all the contract's provisions so that none are rendered meaningless. *Id.* To qualify as a third-party beneficiary, a party must show that it is either a donee or creditor beneficiary of the contract. *Id.* An agreement benefits a creditor beneficiary if, under the agreement, "that performance will come to him in satisfaction of a legal duty owed to him by the promisee." *Id.* (quoting *MCI*, 995 S.W.2d at 651). This duty

may be an indebtedness, a contractual obligation, or another legally enforceable commitment owed to the third party. *Id.*

Here, the trial court found that RD was a creditor third-party beneficiary of Ehring Enterprises's distribution agreement because the territorial restriction was intended to protect RD's interests in connection with the development, marketing, and sales effort in the Western United States. The two distribution agreements, effective the same day, were made in contemplation of each other as Thalgo divided the United States into two exclusive sales territories. Each distribution agreement mentioned the other distributor by name and contemplated disputes arising between the two. RD was not a stranger to Ehring Enterprises's distribution agreement and vice versa. Although Ehring Enterprises's agreement also contained reciprocal benefits for Thalgo and Ehring Enterprises, RD need not show the territorial restriction was solely for its benefit. We conclude there was evidence Ehring Enterprises and Thalgo intended for the territorial restriction to benefit RD and that the restriction was a direct, not incidental, benefit to RD as it protected RD's territory. *See Hellenic Inv., Inc. v. Kroger Co.*, 766 S.W.2d 861, 864–65 (Tex. App.—Houston [1st Dist.] 1989, no writ) (Kroger located in shopping center was third-party beneficiary of restricted use clause in another tenant's lease). Under the specific facts of this case, there is more than a scintilla of evidence to support the court's third-party beneficiary finding and it is not so contrary to the weight of the evidence as to be clearly wrong and unjust.

In reaching this conclusion, we reject Ehring Enterprises's argument that RD could not be a third-party beneficiary because Ehring Enterprises and Thalgo had an implied contract. We note that the concepts of implied contracts and creation of a third-party beneficiary by implication are two distinct concepts. This situation involves neither. Ehring Enterprises's sales to the T Spa began during the second three-year term of its express written contract with Thalgo.

–10–

The court found the territorial restriction in that agreement expressed the parties' intent to confer a direct benefit on RD. The court also found that Sirop's March 2009 letter expressly extended the terms of Ehring Enterprises's distribution agreement and found that all three parties treated the agreement as extended in their course of performance. As such, the terms of the territorial restriction were not implied or in doubt. *See Cotton v. Deasey*, 766 S.W.2d 874, 877 (Tex. App.—Dallas 1989, writ denied) (extension of term of contract is extension of all its provisions). Having found the evidence legally and factually sufficient to support the trial court's finding that RD was a third-party beneficiary, we overrule Ehring Enterprises's first issue and need not consider its second issue regarding the Status Quo Agreement.

In a conditional cross appeal, RD contends the evidence conclusively established its tortious interference claim. RD's cross appeal is conditioned on the Court sustaining either of Ehring Enterprises's issues. Because we are upholding the trial court's judgment, we need not reach RD's conditional cross appeal.

We affirm the trial court's judgment.

/Ada Brown/
ADA BROWN
JUSTICE

130711F.P05

–11–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

EHRING ENTERPRISES, INC. F/K/A
THALGO COSMETIC USA, INC. AND
MARINE IMPACT, INC.,
Appellants/Cross-Appellees

On Appeal from the 44th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-11-04770-b.
Opinion delivered by Justice Brown. Justice
Lang-Miers participating.

No. 05-13-00711-CV       V.

RD MANAGEMENT CORPORATION,
Appellee/Cross-Appellant

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee RD MANAGEMENT CORPORATION recover its costs of this appeal from appellants EHRING ENTERPRISES, INC. F/K/A THALGO COSMETIC USA, INC. AND MARINE IMPACT, INC.

Judgment entered this 25th day of February, 2015.