INTERMEDICS, INC., Appellant,

v.

Frank J. GRADY, M.D., Appellee.

No. 01–84–00306–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 20, 1984.

Rehearing Denied Jan. 17, 1985.

Dan Matthews, Fulbright & Jaworski, San Antonio, Joseph Patterson, Leland B. Kee, Kee & Patterson, Angleton, for appellant.

Ron Etzel, Pearland, for appellee.

Before EVANS, C.J., and SMITH and DUGGAN, JJ.

## OPINION

EVANS, Chief Justice.

The plaintiff, Dr. Frank J. Grady, brought this action against the defendant, Intermedics, Inc., to recover the value of certain shares of Intermedics stock, basing his claim on an oral contract of employment. The trial court submitted the case to a jury, and upon its verdict, the court entered judgment for the plaintiff in the amount of $561,000 plus $7,900 as attorney's fees. We affirm.

Dr. Grady testified that, in December 1975, he was contacted by Mr. Albert Beutel, who was then the executive vice-president and one of three board members of Intermedics. Mr. Beutel had decided that Intermedics, a medical equipment manufacturer, should expand its product line to include intraocular lenses, and his investigation showed that Dr. Grady was one of the most knowledgeable and respected persons in that field. After a series of conversations, the parties reached an oral agreement under which Dr. Grady was to perform consulting services for Intermedics in return for a $20,000 annual salary and 17,000 shares of Intermedics stock. For a period of several years thereafter, Dr. Grady did perform services for Intermedics, as agreed, and was paid his annual salary in sporadic payments. However, Intermedics never issued the stock certificates evidencing Dr. Grady's ownership of the 17,000 shares of stock. On repeated occasions during the course of his employment, Dr. Grady questioned Mr. Beutel about the stock, and·in each instance, he was told not to worry, that his stock certificates would be forthcoming at a time more convenient for the corporation. In March 1979, Mr. Albert Beutel died suddenly, and Dr. Grady demanded the transfer of the stock to him and asked for a raise in salary because of the increasing calls on his time. However, Intermedics did not honor Dr. Grady's requests and instead terminated his employment contract. Dr. Grady then brought this suit in 1981 to recover his 17,000 shares of Intermedics stock, which had increased in number because of stock splits.

In response to special issues, the jury found: (1) that Intermedics had orally agreed to hire Dr. Grady as an employee and to compensate him with stock and a salary, (2) that Intermedics, through Albert Beutel, promised Dr. Grady 17,000 shares of stock, (2a) that Dr. Grady was entitled to receive Intermedics stock within a period of not more than one year of the agreement in May or June 1976, (2b) that the contract between Intermedics and Dr. Grady involved an outright grant of stock rather than an option to purchase, (3) that the fair market value of Intermedics stock in March 1979 was $22 per share, (4) that Dr. Grady should receive $7,900 as reasonable attorney's fees, (4a) that Dr. Grady was reasonably diligent in asserting his claim to the Intermedics stock, (5) that Intermedics, through Albert Beutel, continued to promise Dr. Grady that he would receive his stock until March 1979, (6) that such promise lulled Dr. Grady into a false sense of security, (7) that, therefore, Dr. Grady did not file his action until after March 1979, and (8) that an ordinary, prudent person in Dr. Grady's circumstances would have concluded that Intermedics was waiving any rights to assert the statute of limitations. The jury further found that the contract for Dr. Grady's consulting services could be terminated at the will of either party.

Intermedics' first six points of error relate to its defensive theory that Dr. Grady's action is barred by the applicable two-year statute of limitations. In its first two points, Intermedics contends that the undisputed evidence and the jury's finding to

Special Issue No. 2a established the bar of limitations as a matter of law. In its points of error three, four, five, and six, Intermedics complains of the submission of Special Issues 5, 6, 7 and 8, asserting that such issues are not controlling on the question of estoppel to assert limitations and that there are no pleadings or evidence to support the submission of such issues.

Intermedics' first two points are based upon the jury's finding, in Special Issue No. 2a, that Dr. Grady was entitled to receive stock within one year of May or June 1976, and upon Dr. Grady's similar testimony.

■■■ Limitation of actions is an affirmative defense that must be specifically pleaded and proved. A party asserting limitations must not only establish the applicability of the limitations statute, but must, as well, prove when the opponent's cause of action accrued in order to demonstrate the bar of limitations. *Hoffman v. Wall*, 602 S.W.2d 324, 326 (Tex.Civ.App.—Texarkana 1980, writ ref'd n.r.e.). Where the facts are undisputed, the defendant may establish that the plaintiff's claim is barred by the statute of limitations as a matter of law. *See, e.g., Axcell v. Phillips*, 473 S.W.2d 554, 558 (Tex.Civ.App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.). However, where reasonable minds may differ as to the inferences to be drawn from the evidence, it is incumbent upon the party asserting limitations to secure findings sustaining the plea of limitations. *Metal Structures Corp. v. Plains Textiles, Inc.*, 470 S.W.2d 93, 99 (Tex.Civ.App.—Amarillo 1971, writ ref'd n.r.e.). The question then, in the case at bar, is whether the testimony and jury's finding that Dr. Grady was entitled to the stock within one year of May or June 1976, established, as a matter of law, that his cause of action commenced at that time.

■■■ A breach of contract occurs when a party fails or refuses to do something he has promised to do. *Fidelity & Deposit Co. v. Stool*, 607 S.W.2d 17, 24 (Tex.Civ. App.—Tyler 1980, no writ). Thus, a cause of action for the breach of a promise to pay usually arises when a demand for payment has been made and refused. *See, e.g., Dyer v. Sterett*, 248 S.W.2d 234, 240 (Tex. Civ.App.—San Antonio 1952, writ ref'd n.r. e.). It is also usually at that point, with the right to institute suit, when the limitations period commences. *Gabriel v. Alhabbal*, 618 S.W.2d 894, 896–97 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.).

■■■ If the parties' agreement contemplates a continuing contract for performance, the limitations period does not usually commence until the contract is fully performed, unless one party refuses to fulfill the contract or prevents the other party from performing. *See, e.g., Thomason v. Freberg*, 588 S.W.2d 821, 828 (Tex.Civ.App. —Corpus Christi 1979, no writ); *Alexander & Polley Construction Co. v. Spain*, 477 S.W.2d 301 (Tex.Civ.App.—Tyler 1972, no writ). In such a continuing contract, where a claim for work, labor, or materials furnished is based on an entire contract for continuous work, labor, or materials, the claim is considered to be an entire demand, and the limitations period will not commence until the contract is finished. *Godde v. Wood*, 509 S.W.2d 435, 441 (Tex. Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.). However, if the terms of an agreement call for periodic payments during the course of the contract, a cause of action for such payments may arise at the end of each period, before the contract is completed. *See, e.g., Parker v. Rolls*, 338 S.W.2d 523, 528–29 (Tex.Civ.App.—Austin 1960, no writ). *But see City and County of Dallas Levee Improvement District v. Halsey, Stuart, & Co.*, 202 S.W.2d 957, 960–61 (Tex.Civ.App.—Amarillo 1947, no writ). It has also been held that limitations may begin to run, notwithstanding a continuing performance of the contract, if a demand for performance is required and not made within a reasonable time. *Irwin v. Prestressed Structures, Inc.*, 471 S.W.2d 865, 867–68 (Tex.Civ.App.—Eastland 1971, writ ref'd n.r.e.).

The circumstances related in *Irwin* are similar to those in the instant case, and Intermedics urges that the *Irwin* case

should be given controlling effect. There, the jury found that an officer of the corporation had orally promised Irwin that, as compensation for working for the company, he would receive a relatively low salary, but in addition he would be given 12½% of the corporation's stock. The other officers and directors of the corporation were not informed of this promise. The jury further found that under the terms of such agreement, Irwin had the right to receive the stock within one year from the date of the contract. Finding that the corporation was not estopped to rely on limitations, the trial court entered a take-nothing judgment for the defendant.

On appeal, Irwin argued that the agreement called for his "continuing performance" and that the statute of limitations did not begin to run until he made a demand for stock. The court of civil appeals rejected Irwin's contentions, concluding that even if he was correct in his assertion that limitations did not begin to run until demand was made, such demand itself had to be made within a reasonable time, which ordinarily would be concurrent with the statute of limitations period. Because Irwin did not demand his stock for seven years after the agreement was made, the court held that his cause of action was barred.

The facts and circumstances in the instant case are distinguishable from those in *Irwin* in several respects. However, even under the rationale of the *Irwin* court, Dr. Grady's cause of action would not be barred. The contract between Intermedics and Dr. Grady was made in May or June 1976. The jury found that Dr. Grady was entitled to receive stock within a year, in May or June 1977. According to the *Irwin* case, demand for the stock had to be made within a reasonable time, i.e., the time within the statute of limitations period. Therefore, even if we apply a limitations period ending May or June 1979, as Intermedics asserts we should, it is apparent that Dr. Grady's demand in March 1979, was made within a reasonable time. Hence, the limitations period would have commenced when the demand was made and refused in March 1979, and Dr. Grady's suit in January 1981, was not barred.

Furthermore, the evidence in the case at bar establishes a different set of circumstances than those present in *Irwin*. In the case before us, there was not only an agreement for Dr. Grady's continuing performance under the contract, but also an understanding between Dr. Grady and Mr. Albert Beutel, that even though Dr. Grady was entitled to the stock, the actual transfer would not take place until some undetermined time in the future.

Even if an exact date of performance is specified in a contract, this provision can be waived by the parties. *Highpoint of Montgomery Corp. v. Vail*, 638 S.W.2d 624, 627 (Tex.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.). An extension of time for performance may be implied as well as express. *See, e.g., Ryan v. Thurmond*, 481 S.W.2d 199, 206 (Tex. Civ.App.—Corpus Christi 1972, writ ref'd n.r.e.). Where the exact duration of an extension of time is not expressed, the law will imply a reasonable time. The effect of such an extension is merely to substitute a new time for the old. It does not affect the other provisions of the contract. *Id.*

In *Earthman's, Inc. v. Earthman*, 526 S.W.2d 192 (Tex.Civ.App.—Houston [1st Dist.] 1975, no writ), the parties to a divorce action voluntarily permitted certain stock certificates, which had been ordered transferred to the wife, to be placed in the registry of the court. When the stock certificates were released from registry, the corporation refused to transfer the stock, and the wife brought suit, alleging conversion by the corporation in its wrongful refusal to effect a transfer on its books of the shares of stock to which she was entitled. The corporation responded with the defense that the plaintiff's action was barred by the two-year statute of limitations. Her original petition was filed while the stock certificates were still in the registry of the court. This court held that because the plaintiff was without legal standing to require the corporation to effectuate

the transfer and thus had no legal basis to assert a cause of action for conversion until the stock was released from registry, her suit was not barred by the statute of limitations.

In the present case, Dr. Grady voluntarily permitted Intermedics to retain legal title to his 17,000 shares of stock, pursuant to his understanding with Mr. Beutel, and this condition existed until Mr. Beutel's death in 1979. Until that time, there was not such a distinct and unequivocal refusal by the corporation to effect the transfer that would give Dr. Grady the right to sue. *Earthman's, Inc. v. Earthman*, 526 S.W.2d at 201. Therefore, Intermedics failed to meet its burden of offering evidence and obtaining a finding showing that Dr. Grady had an enforceable claim to compel Intermedics to transfer the stock prior to Mr. Beutel's death. The trial court properly rejected Intermedics' limitations defense, and we accordingly overrule Intermedics' first two points of error. In view of this disposition, we do not consider Intermedics' points three through six, relating to its claim that it is not estopped to assert its limitation defense.

Intermedics' next points, seven, eight, and nine, assert that the trial court erred in submitting Special Issue Nos. 1 and 2, because no evidence or insufficient evidence was offered to show that Mr. Albert Beutel had either actual or apparent authority to agree to the issuance of 17,000 shares of stock to Dr. Grady, and also because there were no pleadings to support the submission of the instruction on apparent authority.

These points raise questions of the legal and factual sufficiency of the evidence, and, because we overrule the no evidence point, we next view all the evidence in the record that is relevant to the question to determine factual sufficiency. *Burnett v. Motyka*, 610 S.W.2d 735 (Tex.1980) (per curiam).

At the time Dr. Grady was retained as a consultant to Intermedics, Mr. Albert Beutel was the executive vice-president and one of the three board members of Intermedics. Mr. Beutel's father, Mr. Phillip Beutel, was then president and chairman of Intermedics' board of directors. Mr. Phillip Beutel testified that he knew of Dr. Grady's employment by Intermedics and was aware of Dr. Grady's contractual relationship with the corporation from the time of his employment until 1979. He testified that Dr. Grady was to be compensated by both salary and stock. He said that his son, Mr. Albert Beutel, had general authority to hire personnel and to grant stock and that his son's actions in that respect were not taken unilaterally. His son, Mr. Albert Beutel, made many other contracts that included stock options, and Intermedics probably had agreements with over 50 people involving the transfer of stock as compensation. Mr. Albert Beutel was the moving force behind Intermedics' expansion into the field of intraocular lenses, and he possessed general authority to act in furtherance of that goal. At the time of Dr. Grady's employment, Mr. Phillip Beutel and his son, Mr. Albert Beutel, together formed a majority of the Intermedics board of directors. Because Mr. Albert Beutel had spearheaded Intermedics' efforts to enter the intraocular lens market, he was given free rein to promote Intermedics' interests in that area. Dr. Grady also offered additional testimony to the same effect, showing that similar offers by Mr. Albert Beutel to others had been generally authorized or ratified by the corporation and that others at Intermedics knew of the stock transfer agreement with Dr. Grady.

A principal may confer actual authority upon an agent either expressly or by implication. *See, e.g., Carr v. Hunt*, 651 S.W.2d 875, 879 (Tex.App.—Dallas 1983, writ ref'd n.r.e.). Indeed, the existence of an agency relationship based on actual authority may be implied from the conduct of the parties or from the facts and circumstances surrounding the transaction in question. *Wells Fargo Business Credit v. Ben Kozloff, Inc.*, 695 F.2d 940, 944 (5th Cir.1983).

We find that there is legally and factually sufficient evidence to support the instructions and issues on authority, and we therefore overrule points of error seven and nine. We also overrule point of error eight, concluding that the trial court's submission of an instruction on apparent authority, even if improper, was harmless error in view of the jury's finding on the issue of implied actual authority. Tex.R. Civ.P. 434; *Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 937–38 (Tex.), *cert. denied*, 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980).

Intermedics' tenth point of error asserts that the trial court erred in submitting the first two special issues, because these issues and the accompanying instructions did not embrace all the elements of an enforceable contract. Contrary to Intermedics' contention, the special issues and the court's instructions relating to contract formation provided enough certainty for determining the party's respective obligations under the agreement in question. As stated, there was evidence supporting the jury's finding of an outright grant of 17,000 shares of stock, and although only 10,000 shares were first mentioned during the parties' negotiations, there was uncontroverted testimony showing the parties later agreed on a grant of 17,000 shares. It was for the jury, as the finder of fact, to resolve conflicting evidentiary questions, and its findings on the submitted issues support the trial court's determination that an enforceable contract existed. We overrule this point of error.

Intermedics' eleventh and twelfth points of error assert that there was no evidence, or insufficient evidence, to support the jury's answer to Special Issue No. 2b, inquiring whether the agreement made with Dr. Grady contemplated an outright grant of stock or merely an option to purchase.

We overrule these points of error. There was evidence that Intermedics had in the past given both stock options and made outright grants of stock under similar agreements. However, the evidence offered on behalf of Dr. Grady in this case evidenced an agreement for a grant of stock, not for an option to purchase stock, and notwithstanding Dr. Grady's testimony that he would have preferred stock options for tax purposes, there was no showing of any such understanding between him and Mr. Albert Beutel. Thus, we find that the jury's finding is supported by the evidence.

In its final two points of error, points 13 and 14, Intermedics contends that the trial court erred in submitting Special Issue No. 3, inquiring as to the market value of the stock in March 1979, and that the jury's finding on this issue is an incorrect measure of damages. Under these points, Intermedics argues that the special issue on damages should have inquired about the market value of the stock as of the date of breach alleged by Intermedics, May or June 1977. Since Intermedics was not required to transfer the stock to Dr. Grady before March 1979, no cause of action existed for breach of its agreement to deliver the stock until that time. *Earthman's, Inc. v. Earthman*, 526 S.W.2d at 201. The special issue concerning damages for breach of a contract for stock was correctly submitted. *See Fidelity & Deposit Co.*, 607 S.W.2d at 24. We overrule these points of error.

The judgment of the trial court is affirmed.