Neel COTTEN, Appellant,

v.

Geoffrey James DEASEY and Charles Randall Goodman, Appellees.

No. 05–88–00788–CV.

Court of Appeals of Texas, Dallas.

March 8, 1989.

Rehearing Denied April 7, 1989.

A.E. Andres, Thurman & Wilder, Arlington, for appellant.

James H. Baumgartner, Jr., Vial, Hamilton, Koch & Knox, Dallas, for appellees.

Before WHITHAM, THOMAS and BURNETT, JJ.

WHITHAM, Justice.

In this suit to recover a commission under an alleged exclusive right to sell listing agreement, the appellant-real estate broker, Neel Cotten, appeals from a summary judgment in favor of the appellee-sellers, Geoffrey James Deasey and Charles Randall Goodman. Both the sellers and the broker filed motions for summary judgment on the issue of breach of contract. The trial court granted the sellers' motion and denied the broker's motion. In his sole point of error, the broker contends that the trial court erred in granting the sellers' motion for summary judgment. We agree. Accordingly, we reverse and remand.

Cotten is a licensed real estate broker. Cotten and the sellers entered a Greater Dallas Board of Realtors form listing agreement which gave Cotten the exclusive right to sell their property. The initial listing covered the one-year period from January 30, 1985, through January 30, 1986. On December 27, 1985, Cotten sent a proposed six-month extension of the listing for signature by the sellers. On January 10, 1986, the sellers responded with a written authorization for Cotten to continue to represent their property for three months, through April 30, 1986. Cotten continued his performance of the listing agreement through April 1986, by endeavoring to sell the property. Unknown to Cotten, on February 3, 1986, the sellers entered into a contract of sale with Kenneth M. Standley covering their property, in which they provided for the closing to take place on May 1, 1986, one day after the end of Cotten's listing. Closing occurred on May 1, 1986, at which time the sellers received $1,685,000.00 in cash. Cotten's five percent commission was not paid.

The dispute between the parties centers on the reasons advanced by the sellers to support the grant of summary judgment in their favor. In this connection, the sellers contend that the trial court properly awarded them summary judgment for three reasons. First, the sellers assert that the uncontradicted summary-judgment evidence established as a matter of law that the listing agreement upon which the broker based his cause of action expired by its own terms on January 30, 1986. Second, the sellers maintain that even if the parties extended the listing agreement until April 30, 1986, the property was not "sold" until after April 30, 1986. Third, the sellers insist that there was never a "sale" because the transaction of February 3, 1986, was not a binding contract of sale.

The sellers' first argument requires us to determine whether the term of the listing agreement was extended from January 30, 1986, through April 30, 1986. The listing agreement provides that "[sellers and broker] may extend this listing agreement from time to time and may modify its terms only by written agreement." As to whether the listing agreement was extended or expired by its own terms on January 30, 1986, we quote the exchange of correspondence between the parties. The broker's December 27, 1985 letter states:

Pursuant to your instructions concerning the listed price on your property under our listing agreement dated January 30, 1985, this letter will serve as your authorization to reduce the price of the property to $1,854,336.00 which is $22.00 per square foot.

Per our discussion, I recommend installing a sign at the northwest corner of your property. If you do not wish to install a sign, please strike this paragraph as it pertains to your approval below.

It will be appropriate to extend the term of the listing to July 30, 1986.

If the above meet with your approval, we will appreciate your signatures in the space provided below and return one copy to us.

Enclosed please find the copy of the appraisal from which I have made copies.

Thank you for the opportunity to work with you.

The sellers' January 10, 1986 response replies:

I am in receipt of your letter of 12/27/85. After reviewing the market

both Randy and I will authorize you to continue to represent our property at $1,854,336.00 or $22.00 per square foot *for a period continuing until April 30, 1986.* At this time I will again review the progress you and your associates have made in light of the price reduction. We obviously appreciate all your assistance in marketing the property and certainly hope the new pricing will produce a qualified purchaser.

Also, thanks for the return of the appraisal.

(Emphasis added). The sellers insist that this exchange of correspondence created a new, non-exclusive listing rather than continue the old exclusive listing agreement. We disagree.

■ Even if an exact date of performance is specified in a contract, this provision can be waived by the parties. *Intermedics, Inc. v. Grady,* 683 S.W.2d 842, 846 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). An extension of time for performance may be implied as well as express. *Intermedics,* 683 S.W.2d at 846. Where the exact duration of an extension of time is not expressed, the law will imply a reasonable time. *Intermedics,* 683 S.W. 2d at 846. The effect of such an extension is merely to substitute a new time for the old. It does not affect the other provisions of the contract. *Intermedics,* 683 S.W.2d at 846. The extension of the term of a contract is the extension of all its provisions. *See Morgan v. Stover,* 511 S.W.2d 362, 365 (Tex.Civ.App.—Eastland 1974, writ ref'd n.r.e.). We conclude that the exchange of correspondence between the parties on December 27, 1985, and January 10, 1986, constituted an extension of the term of the listing agreement from January 30, 1986, until April 30, 1986. We conclude further that this extension of time extended all of the provisions of the listing agreement. It follows that we find no merit in the sellers' argument that the listing agreement expired by its own terms on January 30, 1986, and that the parties created a new, non-exclusive listing. Instead, we conclude that the parties extended the term of the listing agreement until April 30, 1986.

Next, we consider the sellers' second argument in which sellers maintain that, even if the parties extended the listing agreement until April 30, 1986, the property was not "sold" until after April 30, 1986. Before proceeding, we point out that it is undisputed that the broker continued to perform his obligations under the listing agreement during the period of January 30, 1986, until April 30, 1986. Thus, we focus on the word "sold" as used in the listing agreement: "If during the term of this listing agreement, the property is sold by [sellers], [sellers] will pay to [broker] ... a commission in cash as set forth above." The sellers maintain that "sold" means transfer of legal title and payment for the property. It is undisputed that the transaction was closed on May 1, 1986. It is undisputed that title was transferred and that payment was made at the May 1, 1986 closing. Hence, sellers assert that the property "sold" on May 1, 1986, after expiration of the extended term of the listing agreement.

■ In the present case, we conclude that "sold," as that word is used in the listing agreement, does not require a consummated transaction. We reach this conclusion in light of the listing agreement's language whereby sellers appoint the broker as their agent. To quote the listing agreement: "[Sellers] hereby irrevocably [appoint] [broker] as [their] exclusive agent, with the exclusive right ... [t]o sell said property upon the following terms and conditions or on such other terms as approved by [sellers]." Thus, we reason that the sellers engaged the broker to obtain an offer meeting specified terms and conditions; not to produce a successful closing in which title is transferred and purchase price paid. Indeed, if the parties had intended that the broker obtain a consummated transaction before he earned his commission, it would have been a simple matter to so provide in the listing agreement. A contract, whether written or oral, must define its essential terms with sufficient precision to enable the court to determine the obligations of the parties. *Weitzman v. Steinberg,* 638 S.W.2d 171, 175

(Tex.App.—Dallas 1982, no writ). Hence, we decline to hold that "sold," as used in the listing agreement, requires the broker to see that the deed is delivered and that the buyer's check is good. To the contrary, we hold that "sold," in the context of the present owner-realtor dispute, means to secure, within the required period of time, the existence of a binding offer to buy the property under the terms and conditions specified by the owner. *See Cox v. Huffman,* 159 Tex. 298, 319 S.W.2d 295, 297 (1958). Moreover, it is undisputed that the sellers accepted an offer meeting terms and conditions agreeable to them within the extended term of the listing agreement. Consequently, we conclude that "during the term of the listing agreement, the property [was] sold" within the meaning of the listing agreement. It follows that we find no merit in the sellers' argument that the property was not sold until after April 30, 1986. Instead, we conclude that the property was "sold" during the extended term of the listing agreement so as to trigger the sellers' contractual obligation to "pay to [broker] . . . a commission in cash" equal to five percent of $1,685,000.00.

▀▀▀ We now turn to sellers' third reason advanced to support the summary judgment in their favor. The sellers insist that there was no "sale" because the transaction of February 3, 1986, was not a binding contract of sale. The sellers reason that the contract of sale to Standley was unenforceable against sellers because it was conditioned on two matters: first, Standley's determination that financing was available to him in an amount and on terms satisfactory to him in his sole judgment; and, second, good and marketable title as evidenced by a standard form title insurance policy subject only to such existing leases as may be approved by purchaser and such other encumbrances and matters as may be approved by purchaser. We disagree that the contract was unenforceable. As stated in 5 Williston on Contracts (3rd Ed.) § 675A:

It has been questioned whether an agreement in which the promise of one party is conditional on his own or the other party's satisfaction contains the elements of a contract—whether the agreement is not illusory in character because conditioned upon the whim or caprice of the party to be satisfied. Since, however, such a promise is generally considered as requiring a performance which shall be satisfactory to him in the exercise of an honest judgment, such contracts have been almost universally upheld.

*Cited with approval in Atomic Fuel Extraction Corp. v. Slick's Estate,* 386 S.W. 2d 180, 185 (Tex.Civ.App.—San Antonio 1964), *writ ref'd n.r.e. per curiam,* 403 S.W.2d 784 (Tex.1965). Whether a party's dissatisfaction about the conditions was feigned or in good faith is a fact issue. The decision must be made in good faith. *Atomic Fuel,* 386 S.W.2d at 185. Hence, we conclude that contracts conditioned as in the present case require the exercise of honest judgment by the purchaser. Therefore, we hold that a contract of sale conditioned on the purchaser's determination that financing was available to him in an amount and on terms satisfactory to the purchaser in his sole judgment does not render the contract nonbinding and unenforceable. We hold further that a contract of sale conditioned on good and marketable title as evidenced by a standard form title insurance policy subject only to such existing leases as may be approved by purchaser and such other encumbrances and matters as may be approved by purchaser does not render the contract nonbinding and unenforceable. Thus it follows that the two conditions pointed to by the sellers do not render the seller-Standley contract of sale nonbinding and unenforceable. Therefore, we find no merit in the sellers' argument that there was never a "sale" because the transaction of February 3, 1986, was not a binding contract of sale.

▀▀▀ For the above reasons, we conclude that the trial court erred in granting the sellers' motion for partial summary judgment on the issue of breach of contract as to the listing agreement. We sustain the broker's sole point of error insofar as it complains of the granting of this motion for partial summary judgment. Therefore, we do not reach the broker's contentions under his sole point of error complaining of

the trial court's granting of the sellers' motion for partial summary judgment on the issue of good faith and fair dealing. Our conclusion of trial court error as to the issue of breach of the listing agreement alone requires that we reverse the trial court's judgment. The broker, however, does not, by an assignment in a point of error or by argument, complain that the trial court erred in failing to grant his motion for summary judgment. When both parties file motions for summary judgment and one such motion is granted, then the trial court's judgment is final and appealable and, on appeal, this court should determine all questions presented. *Tobin v. Garcia*, 159 Tex. 58, 316 S.W.2d 396, 400 (1958). If reversible error is found, this court should render such judgment as the trial court should have rendered. *Tobin*, 316 S.W.2d at 400. Where, however, the only error assigned by the appellant complains of the granting of the appellee's motion for summary judgment and there is no assignment of error that the trial court erred in failing to grant the appellant's own motion for summary judgment, this court may not render judgment. *See Buckner Glass & Mirror v. T.A. Pritchard Co.*, 697 S.W.2d 712, 714–15 (Tex.App.—Corpus Christi 1985, no writ); *Holmquist v. Occidental Life Ins. Co.*, 536 S.W.2d 434, 438 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.). Instead, we may only remand the cause to the trial court. *Buckner Glass*, 697 S.W.2d at 714–15; *Holmquist*, 536 S.W.2d at 438. Consequently, we conclude that the broker is not entitled to rendition of a judgment in his favor on his own motion for summary judgment. All assignments of error not brought forward as points of error are waived. *Mullinax, Wells, Baab and Cloutman, P.C. v. Sage*, 692 S.W.2d 533, 536 (Tex.App.—Dallas 1985, writ ref'd n.r.e.).

Accordingly, we reverse the trial court's judgment and remand the cause to the trial court.