**REVERSE and RENDER; and Opinion Filed November 16, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00761-CV

### MICROLASER THERAPY CORPORATION D/B/A MSH INVESTMENTS, INC., AS AUTHORIZED AGENT FOR MICHAEL S. HYNEK, ROY C. BROCK, CHRISTINA BROCK, TIM HOUSE AND PETER UTZIG, Appellant
### V.
### ROSCOE F. WHITE, III, Appellee

**On Appeal from the 95th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-04263**

## MEMORANDUM OPINION

Before Justices Myers, Evans, and Brown
Opinion by Justice Brown

Appellant Microlaser Therapy Corporation d/b/a MSH Investments, Inc. (MSH) appeals the trial court's rulings on cross-motions for summary judgment in this suit brought by MSH to collect under a guaranty. In three issues, MSH contends the trial court erred in denying summary judgment to MSH on its claim for appellee Roscoe F. White, III's breach of the guaranty and granting summary judgment to White on the basis of his statute of limitations affirmative defense. For the following reasons, we reverse the trial court's summary judgment orders and render judgment in favor of MSH.

BACKGROUND

On August 31, 2009, Tri-Properties, Ltd. (Tri-Properties) executed a secured promissory note (note) payable to MSH as agent for payees Michael S. Hynek, Roy C. Brock, Christina Brock, Tim House, and Peter Utzig (collectively, payees). The note, which matured on December 30, 2010, memorialized Tri-Properties's promise to pay principal of $2,383,750.00 and accrued interest on the principal amount. White signed a guaranty agreement (guaranty),[1] also dated August 31, 2009, guaranteeing the prompt and full payment and performance of Tri-Properties's payment obligations under the note. Specifically, the guaranty obliged White to pay the amount of Tri-Properties's payment obligations under the note within thirty days of receiving written demand for payment at any time after the payment obligations had become due and payable.

As of December 1, 2014, the amount due under the note was $3,198,029.36 with interest continuing to accrue at a rate of twelve percent per annum. Effective December 29, 2014, Tri-Properties, White, and MSH entered into a tolling agreement in which Tri-Properties and White acknowledged the validity of the note and affirmed the $3,198,029.36 balance due as of December 1, 2014. An attachment to the tolling agreement, Exhibit A, reflected the balance due. The tolling agreement reserved all claims available to payees pursuant to either the note or guaranty and suspended and tolled, among other things, all relevant statutes of limitations during a suspension period. Any claims asserted by payees during the suspension period would be deemed to have been filed on the tolling agreement's December 29, 2014 effective date, and the parties waived any statute of limitations, bars and defenses existing as of the December 29, 2014 effective date.

---

[1] Marlin Atlantis White, Ltd., also executed a guaranty agreement and is a defendant in the underlying suit, but not a party to this appeal. Following entry of the trial court's summary judgment orders, White moved to sever MSH's claim against him, and the trial court granted the motion, making its summary judgment orders on MSH's claim against White final and appealable.

–2–

Further, the passage of time during the suspension period would not be counted against any period of time measured by the statute of limitations.

On September 9, 2016, MSH sued White for breach of the guaranty. MSH alleged Tri-Properties failed to comply with the terms of the note, making White liable for the balance, and White, after written demand for payment was made, failed and refused to pay. MSH sought recovery of the amount due under the note and attorney's fees. White answered, asserting, among other things, a statute of limitations affirmative defense.

Thereafter, MSH filed a summary judgment motion on its claim for White's breach of the guaranty. In his response, White asserted the motion should be denied because MSH "blew the 'statute of limitations.'" White also filed a motion for summary judgment on the same ground. Specifically, White argued the statute of limitations barred Tri-Properties's claim because Tri-Properties's breach of the note – the event of default giving rise to the claim – occurred prior to execution of the tolling agreement and more than four year before MSH filed suit. The trial court entered orders granting White's motion and denying MSH's motion. After the trial court entered an additional order severing MSH's claim against White, MSH filed this appeal.

APPLICABLE LAW

We review a trial court's decision to grant or deny summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). A trial court properly grants summary judgment when the movant establishes there are no genuine issues of material fact and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. App. 1985). To review a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). When, as here, both

–3–

parties move for summary judgment, each party bears the burden of establishing it is entitled to judgment as a matter of law. *Guynes v. Galveston County*, 861 S.W.2d 861, 862 (Tex. 1993); *Mira Mar Dev. Corp. v. City of Coppell*, 421 S.W.3d 74, 83 (Tex. App.—Dallas 2013, no pet.). "Neither party can prevail because of the other's failure to discharge its burden." *Mira Mar Dev. Corp.*, 421 S.W.3d at 83. When the trial court grants one motion and denies the other, we review both parties' summary judgment evidence, determine the questions presented, and render the judgment the trial court should have rendered. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Mira Mar Dev. Corp.*, 421 S.W.3d at 83.

A guaranty is an obligation by a third party to a creditor to pay a debt on behalf of a principal in the event the principal defaults on its original obligation. *See Republic Nat'l Bank of Dallas v. Nw. Nat'l Bank of Fort Worth*, 578 S.W.2d 109, 114 (Tex. 1978); *Anderton v. Cawley*, 378 S.W.3d 38, 46 (Tex. App.—Dallas 2012, no pet.). To recover under a guaranty, a claimant must conclusively establish the existence and ownership of the guaranty, the terms of the underlying contract by the holder, the occurrence of the condition upon which liability is based, and the guarantor's failure or refusal to perform its promise. *Anderton*, 378 S.W.3d at 46-47; *Marshall v. Ford Motor Co.*, 878 S.W.2d 629, 631 (Tex. App.—Dallas 1994, no writ).

A plaintiff must bring suit on a debt no later than four years after the date its claim accrues. TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(3). A claim for breach of a promise to pay arises when a demand for payment has been made and refused, unless demand was waived or unreasonably delayed. *Wiman v. Tomaszewicz*, 877 S.W.2d 1, 5 (Tex. App.—Dallas 1994, no writ) (citing *Intermedics, Inc. v. Grady*, 683 S.W.2d 842, 845 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.)). To prevail on a limitations defense, a defendant must conclusively establish the elements of the defense, including when the plaintiff's claim accrued.

–4–

*See Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005). When a claim accrues is a question of law that we review de novo. *See Sowell v. Int'l Interests, LP*, 416 S.W.3d 593, 598 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

ANALYSIS

On summary judgment, White asserted the statute of limitations barred MSH from recovering on its breach-of-guaranty claim because the claim accrued before the note's December 30, 2010 maturity date and expired before both entry of the December 29, 2014 tolling agreement and MSH filed suit. Specifically, White maintained the claim accrued when Tri-Properties failed to pay 2009 interest,[2] which White alleged was due by January 1, 2010 pursuant to paragraph 1(b) of the note. Paragraph 1(b) provides:

> Accrued and unpaid interest on the outstanding principal balance of this Note shall additionally be due and payable as follows: (i) interest accruing from and after the date of this Note through November 30, 2009 shall be due and payable on the Maturity Date (it being understood that the sum of such accrued and unpaid interest shall itself not bear any additional interest during the period from and after November 30, 2009 to the Maturity Date); and (iii) [sic] interest accruing from and after November 30, 2009 shall be due and payable monthly in arrears on the first day of each month, commencing January 1, 2010.

---

[2] In his summary judgment motion, White also asserted Tri-Properties was in default on the note due to "unpaid attorneys' fees" of $11,295.50 from 2006 through 2010, but he has not made this argument on appeal, referring to those fees only as being included in "the note's balance at maturity." Accordingly, we consider only whether the failure to pay 2009 unpaid interest constituted a default causing MSH's claim to accrue.

White contended this failure to pay 2009 interest constituted an "event of default,"[3] which caused the note to automatically accelerate[4] and become immediately due and payable as of January 1, 2010. White further contended MSH's claim against him under the guaranty also accrued on January 1, 2010.[5] Thus, according to White, MSH's claim against him expired under the four-year statute of limitations well before the December 29, 2014 effective date of the tolling agreement and MSH's subsequently filing this suit.

In its first issue, MSH asserts the trial court should have denied White's summary judgment motion because he did not conclusively establish the statute of limitations barred MSH's claim for

---

[3] The note defines "event of default" as the occurrence of any one or more of the following:

(a) Any indebtedness evidenced or governed by this Note is not paid when due and remains unpaid for a period of thirty (30) days following Payee Agent's written notice to Maker.

(b) Maker or any other person obligated to pay any part of the indebtedness evidenced or governed by this Note: (1) fails to pay, or otherwise secure the extension for payment of, any of its respective debts, secured or unsecured, as such debts come due or admits in writing its inability to pay its debts or makes a general assignment for the benefit of creditors; or (2) commences any case, proceeding, or other action seeking reorganization, arrangement, adjustment, liquidation, dissolution, or composition of it or its debts under any debtor relief laws; or (3) in any involuntary case, proceeding, or other action commenced against it which seeks to have an order for relief entered against it, as debtor, or seeks reorganization, arrangement, adjustment, liquidation, dissolution, or composition of it or its debts under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors, and (i) fails to obtain a dismissal of such case or proceeding or (ii) converts the case from one chapter of the Federal Bankruptcy Code to another chapter, or (iii) is the subject of an order for relief; or (4) applies or consents to have a trustee, receiver, custodian, intervenor, liquidator, or other similar official appointed for or take possession of all or any part of its property or has any court take jurisdiction of its property which continues for a period of sixty (60) days; or (5) fails to have discharged within a period of thirty (30) days any attachment, sequestration, or similar writ levied upon any property of such person.

(c) Maker fails or refuses to observe, keep, and perform any of the covenants, agreements, and obligations contained in this Note.

(d) Any default or event of default occurs under any Guaranty, Security Document or other instrument or agreement evidencing, guaranteeing, securing or otherwise relating to the indebtedness evidences by this Note, and such default or event of default continues beyond any applicable grace or cure period.

Although section (a) clearly applies to a default related to indebtedness under the note, White contended Tri-Properties's alleged failure to timely pay interest due also constituted "the failure by Tri-Properties 'to pay . . . any of its respective debts, secured or unsecured, as such debts come due . . .'" under section (b).

[4] White relied on the following portion of paragraph 2 of the note to show the failure to pay the 2009 interest accelerated Tri-Properties's payment obligations: ". . . Upon the happening or occurrence of an Event of Default specified in clause (b) of the definition of "Event of Default", the entire unpaid principal balance of, and all accrued and unpaid interest on, this Note shall automatically become immediately due and payable, without further notice or demand."

[5] In his summary judgment motion, White cited only to the note's provisions on default as support for the proposition that MSH's claim against White as guarantor accrued at the same time and without the need for notice to White. However, on appeal, he relies on a waiver of notice of demand provision in the guaranty and paragraph 10 of the guaranty, which provides, "[i]n the event of a default in the payment of all or any part of the Guaranteed Obligations when such Guaranteed Obligations become due, Guarantor shall promptly pay the Guaranteed Obligations, or the amount then due, . . . ."

breach of the guaranty. Among other grounds,[6] MSH asserts White's motion should have been denied because White's summary judgment evidence did not conclusively establish Tri-Properties failed to timely pay any 2009 interest or otherwise default on the note before its December 30, 2010 maturity date.

As evidence of Tri-Properties's failure to pay 2009 interest, White relied solely on Exhibit A to the tolling agreement, which White characterizes on appeal as an "agreed-upon payment history." According to White's summary judgment pleadings, Exhibit A establishes Tri-Properties was in default because it shows "2009 Unpaid Interest Due" of $71,316.58 and the note provided that interest was due monthly.

There is no evidence, however, that Exhibit A is a comprehensive "payment history" for the note. To the contrary, the tolling agreement states only that Exhibit A reflects the balance due ($2,881,605.42 in principal and $316,423.94 in interest) as of December 1, 2014. Nor is Exhibit A any evidence that Tri-Properties failed to pay any interest due on January 1, 2010. Although paragraph 1(b) of the note provides "interest accruing from and after November 30, 2009 shall be due and payable monthly in arrears on the first date of each month, commencing January 1, 2010," Exhibit A clearly specifies that the "2009 Unpaid Interest" of $71,316.58 was due on the note's December 30, 2010 maturity date.[7] At most, Exhibit A can be read to indicate no delinquent interest was due as of December 1, 2010 and $17,960.14 in delinquent interest was due for the period ending December 30, 2010.

---

[6]  MSH also asserts the trial court should have denied White's summary judgment motion on the following grounds: (1) the note did not automatically accelerate; (2) MSH's claim against White did not accrue until MSH made a written demand for payment from White; (3) White agreed to waive any statute of limitations defense in the tolling agreement; and (4) White's acknowledgement of the debt in the tolling agreement created a new obligation sufficient to defeat his limitations defense.

[7]  During the summary judgment hearing, White's counsel argued for the first time that a portion of the $71,316.58 in interest actually had been due, but unpaid, on January 1, 2010. White, however, submitted no new summary judgment evidence to support his counsel's assertion.

# EXHIBIT A

Original Principal Balance: $2,383,750
Principal Paydown in 2010: ($500,000)
Deferred Cash Payment Due 12/30/10: $116,614.04
2009 Unpaid Interest Due 12/30/10: $71,316.58
Unpaid Attorneys Fees 2006-2010: $11,295.50

Principal Balance*: 2,082,976.12
Interest Rate: 12%

* New Pricipal Balance as of 12/31/10

| Date | # of days | Interest Payment Due For Period | Payment Made | Delinquent Interest Due | Principle Payment | Adjusted Priscile Balance |
|---|---|---|---|---|---|---|
| 12/1/10 | | | | | | |
| 12/30/10 | 29 | 17,960.14 | 0.00 | 17,960.14 | 0.00 | 2,082,976.12 |
| 1/1/11 | 2 | 1,369.63 | 0.00 | 19,329.77 | 0.00 | 2,082,976.12 |
| 2/1/11 | 31 | 21,229.24 | 38,398.00 | 2,161.01 | 0.00 | 2,082,976.12 |
| 3/1/11 | 28 | 19,174.79 | 17,341.00 | 3,994.80 | 0.00 | 2,082,976.12 |
| 4/1/11 | 31 | 21,229.24 | 0.00 | 25,224.04 | 0.00 | 2,082,976.12 |
| 5/1/11 | 30 | 20,544.42 | 0.00 | 45,768.46 | 0.00 | 2,082,976.12 |
| 6/1/11 | 31 | 21,229.24 | 0.00 | 66,997.70 | 0.00 | 2,082,976.12 |
| 7/1/11 | 30 | 20,544.42 | 0.00 | 87,542.12 | 0.00 | 2,082,976.12 |
| 8/1/11 | 31 | 21,229.24 | 0.00 | 108,771.36 | 0.00 | 2,082,976.12 |
| 9/1/11 | 31 | 21,229.24 | 0.00 | 130,000.60 | 0.00 | 2,082,976.12 |
| 10/1/11 | 30 | 20,544.42 | 0.00 | 150,545.02 | 0.00 | 2,082,976.12 |
| 11/1/11 | 31 | 21,229.24 | 0.00 | 171,774.26 | 0.00 | 2,082,976.12 |
| 12/1/11 | 30 | 20,544.42 | 0.00 | 192,318.68 | 0.00 | 2,082,976.12 |
| 1/1/12 | 31 | 21,229.24 | 0.00 | 0.00 | -213,547.92 | 2,296,524.04 |
| 2/1/12 | 31 | 23,405.67 | 0.00 | 23,405.67 | 0.00 | 2,296,524.04 |
| 3/1/12 | 29 | 21,895.63 | 0.00 | 45,301.30 | 0.00 | 2,296,524.04 |
| 4/1/12 | 31 | 23,405.67 | 0.00 | 68,706.97 | 0.00 | 2,296,524.04 |
| 5/1/12 | 30 | 22,650.65 | 0.00 | 91,357.62 | 0.00 | 2,296,524.04 |
| 6/1/12 | 31 | 23,405.67 | 0.00 | 114,763.29 | 0.00 | 2,296,524.04 |
| 7/1/12 | 30 | 22,650.65 | 0.00 | 137,413.94 | 0.00 | 2,296,524.04 |
| 8/1/12 | 31 | 23,405.67 | 0.00 | 160,819.61 | 0.00 | 2,296,524.04 |
| 9/1/12 | 31 | 23,405.67 | 0.00 | 184,225.28 | 0.00 | 2,296,524.04 |
| 10/1/12 | 30 | 22,650.65 | 0.00 | 206,875.93 | 0.00 | 2,296,524.04 |
| 11/1/12 | 31 | 23,405.67 | 0.00 | 230,281.60 | 0.00 | 2,296,524.04 |
| 12/1/12 | 30 | 22,650.65 | 0.00 | 252,932.25 | 0.00 | 2,296,524.04 |
| 1/1/13 | 31 | 23,405.67 | 0.00 | 0.00 | -276,337.92 | 2,572,861.96 |
| 2/1/13 | 31 | 26,222.05 | 0.00 | 26,222.05 | 0.00 | 2,572,861.96 |
| 3/1/13 | 28 | 23,684.43 | 0.00 | 49,906.48 | 0.00 | 2,572,861.96 |
| 4/1/13 | 31 | 26,222.05 | 0.00 | 76,128.53 | 0.00 | 2,572,861.96 |
| 5/1/13 | 30 | 25,376.17 | 0.00 | 101,504.70 | 0.00 | 2,572,861.96 |
| 6/1/13 | 31 | 26,222.05 | 0.00 | 127,726.75 | 0.00 | 2,572,861.96 |
| 7/1/13 | 30 | 25,376.17 | 0.00 | 153,102.92 | 0.00 | 2,572,861.96 |
| 8/1/13 | 31 | 26,222.05 | 0.00 | 179,324.97 | 0.00 | 2,572,861.96 |
| 9/1/13 | 31 | 26,222.05 | 0.00 | 205,547.02 | 0.00 | 2,572,861.96 |
| 10/1/13 | 30 | 25,376.17 | 0.00 | 230,923.19 | 0.00 | 2,572,861.96 |
| 11/1/13 | 31 | 26,222.05 | 0.00 | 257,145.24 | 0.00 | 2,572,861.96 |
| 12/1/13 | 30 | 25,376.17 | 0.00 | 282,521.41 | 0.00 | 2,572,861.96 |
| 1/1/14 | 31 | 26,222.05 | 0.00 | 0.00 | -308,743.46 | 2,881,605.42 |
| 2/1/14 | 31 | 29,368.69 | 0.00 | 29,368.69 | 0.00 | 2,881,605.42 |
| 3/1/14 | 28 | 26,526.56 | 0.00 | 55,895.25 | 0.00 | 2,881,605.42 |
| 4/1/14 | 31 | 29,368.69 | 0.00 | 85,263.94 | 0.00 | 2,881,605.42 |
| 5/1/14 | 30 | 28,421.31 | 0.00 | 113,685.25 | 0.00 | 2,881,605.42 |
| 6/1/14 | 31 | 29,368.69 | 0.00 | 143,053.94 | 0.00 | 2,881,605.42 |
| 7/1/14 | 30 | 28,421.31 | 0.00 | 171,475.25 | 0.00 | 2,881,605.42 |
| 8/1/14 | 31 | 29,368.69 | 0.00 | 200,843.94 | 0.00 | 2,881,605.42 |
| 9/1/14 | 31 | 29,368.69 | 0.00 | 230,212.63 | 0.00 | 2,881,605.42 |
| 10/1/14 | 30 | 28,421.31 | 0.00 | 258,633.94 | 0.00 | 2,881,605.42 |
| 11/1/14 | 31 | 29,368.69 | 0.00 | 288,002.63 | 0.00 | 2,881,605.42 |
| 12/1/14 | 30 | 28,421.31 | 0.00 | 316,423.94 | 0.00 | 2,881,605.42 |
| 1/1/15 | 31 | 29,368.69 | 0.00 | 0.00 | -345,792.63 | 3,227,398.05 |

Because White did not conclusively establish the alleged January 1, 2010 default on which he based his argument as to when MSH's breach-of-guaranty claim accrued, he was not entitled to prevail on his limitations defense and the trial court erred in granting summary judgment in his favor. *See Diversicare Partners, Inc.*, 185 S.W.3d at 846; *Guynes*, 861 S.W.2d at 862. Accordingly, we need not address the other grounds on which MSH contends the trial court erred in granting White's motion for summary judgment. We sustain MSH's first issue.

White moved for summary judgment "on his affirmative defense of statute of limitations *and* on [MSH's] claims for breach of the promissory note and guaranty." (Emphasis added). Because the trial court's order granting White's summary judgment motion does not state the basis upon which it was granted, MSH raises a second issue challenging the summary judgment to the extent it was granted on any ground other than limitations. *See, e.g., State Farm Fire & Casualty Co. v. S.S.*, 858 S.W.2d 374, 381 (Tex. 1993) (if summary judgment movant asserts multiple grounds and trial court does not specify ground on which it granted judgment, appellant must attack all grounds on appeal).

A motion for summary judgment must state the specific grounds on which judgment is sought, and a judgment may be secured only on those grounds specifically named and discussed in the motion. TEX. R. CIV. P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 339 (Tex. 1993); *Wright v. Sydow*, 173 S.W.3d 534, 554 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). Here, the only specific ground stated and discussed in White's motion was the statute of limitations, and he has not argued otherwise in this appeal. Thus, we sustain MSH's second issue to the extent the trial court may have granted summary judgment to White on the basis of his generalized, but unsupported, request for summary judgment "on [MSH's] claims for breach of the promissory note and guaranty."

In its third issue, MSH contends the trial court erred in denying its motion for summary judgment because it established each of the essential elements of its breach-of-guaranty claim against White. In support of its motion, MSH offered the affidavit of Michael S. Hynek, both a payee and president of MSH. Hynek's affidavit established (1) the existence of the note, guaranty, and tolling agreement, copies of which were attached to the affidavit and verified by Hynek to be true and correct, (2) the payees' ownership of the guaranty and MSH's authority to act on the payees' behalf, (3) Tri-Properties received $2,383,750.00 from payees in return for executing the note, (4) White executed the guaranty and unconditionally and absolutely guaranteed the prompt and full payment and performance of the note, (5) Tri-Properties and White failed to tender payments when due, (6) written demand was made upon White for payment of the sums due, and (7) the total amount due and owing under the note on December 1, 2016 was $3,889,614.66 with interest continuing to accrue thereon at the rate of twelve percent per annum ($97.38 per diem) until paid in full. Hynek's affidavit, along with the attached note and guaranty, established each element required to recover under a guaranty. *See, e.g., Am 10-Minute Oil Change, Inc. v. Metro Nat. Bank-Farmers Branch*, 783 S.W.2d 598, 600-01 (Tex. App.—Dallas 1989, no writ) (affidavit made on bank officer's personal knowledge identifying notes and guaranty and reciting principal and interest due is sufficient evidence to support summary judgment).

White presented no evidence to controvert the facts set out in Hynek's affidavit. Instead, his response to MSH's summary judgment motion was limited to his argument that the statute of limitations barred MSH's recovery. As discussed above, however, Exhibit A constituted no evidence, and thus failed to raise a fact issue, on whether Tri-Properties was in default on the note as of January 1, 2010. Accordingly, MSH established its right to judgment as a matter of law on the guaranty. *See Am 10-Minute Oil Change, Inc.*, 783 S.W.2d at 601; *Sharpe v. Lomas &*

*Nettleton Fin. Corp.*, 601 S.W.2d 55, 57-58 (Tex. App.—Dallas 1980, writ ref'd n.r.e.) (in the absence of controverting evidence, affidavit based on personal knowledge identifying note and guaranty agreement and reciting principal balance of the note and accumulated interest after allowing credits was competent summary judgment evidence); *Blankenship v. Robins*, 899 S.W.2d 236, 238-39 (Tex. App.—Houston [1st Dist.]1994, no pet.).

MSH also sought attorney's fees and submitted as summary judgment evidence the affidavit of its attorney Timothy Woods. The affidavit sets out Woods's qualifications, his familiarity with the normal and customary legal fees for similar cases in Dallas County, and the work he and his law firm performed for MSH. Relevant law firm billing records with additional detail were attached to the affidavit. According to Woods, the services performed were necessary, it was reasonable for his firm to perform the services, and the time spent performing those services was reasonably and necessary. And, having considered the factors set out in State Bar Rule 1.04(b) and applicable commentary and case law, Woods opined that MSH incurred reasonable and necessary attorney's fees of $10,000.00 and litigation-related expenses of $333.07 in prosecuting its claims against the guarantors. Woods also opined to reasonable and necessary appellate attorney's fees, conditioned upon White's unsuccessful appeal, of $20,000.00 in the event of appeal to this Court, $15,000.00 in the event of a petition for review to the Texas Supreme Court, and $15,000.00 in the event the Texas Supreme Court requires a response to a petition for review. White did not file a controverting affidavit or any other evidence to dispute that the fees requested were reasonable and necessary.

The guaranty provides for White to pay all "costs and expenses, including without limitation, all reasonable attorney's fees incurred by [MSH] and Payees in connection with the enforcement and/or collection of the Guaranty." A prevailing party in a suit on written contract

also is entitled to recover reasonable attorney's fees. *See* CIV. PRAC. & REM. § 38.001(8); *Ashford Partners, Ltd. v. ECO Resources, Inc.*, 401 S.W.3d 35, 40 (Tex. 2012). Although the reasonableness of attorney's fees is ordinarily a question of fact, an affidavit by a summary judgment movant's attorney setting forth the attorney's qualifications, opinion regarding reasonable attorney's fees, and the basis for the opinion "will be sufficient to support summary judgment, if uncontroverted." *Basin Credit Consultants, Inc. v. Obregon*, 2 S.W.3d 372, 373 (Tex. App.—San Antonio 1999, pet. denied); *see also Am. 10-Minute Oil Change, Inc.*, 783 S.W.2d at 602; *Carto Prop., LLC v. Briar Cap., L.P.*, No. 01-15-01114-CV, 2018 WL 827558, at *13 (Tex. App.—Houston [1st Dist.] 2018, pet. denied).

Based on the affidavit's clear, positive, and direct facts, which White could have, but did not, readily controvert, and Woods's consideration of well-settled factors in determining the reasonableness of the fees requested, we conclude the affidavit constitutes legally competent evidence that the attorney's fees and expenses sought by MSH were reasonable. *See* TEX. R. CIV. P. 166a(c) (summary judgment may be based on uncontroverted testimony of expert witness "if evidence is clear, positive, and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted"); *see also* CIV. PRAC. & REM. §§ 38.001(8); 38.003. Because MSH conclusively established each element required to prove its breach-of-guaranty claim against White as well as the reasonableness and amount of the attorney's fees and expenses it sought to recover, we conclude the trial court erred in denying MSH's summary judgment motion. We sustain MSH's third issue.

CONCLUSION

Based on the foregoing, we reverse the trial court's orders granting White's summary judgment motion and denying MSH's summary judgment motion and render judgment that MSH

recover (1) actual damages in the amount of $3,889,614.66 as of December 1, 2016 with interest continuing to accrue thereon at the rate of twelve percent per annum ($947.38 per diem) until paid in full; (2) the sum of $10,033.07 for attorney's fees and expenses in the trial court, (3) the sum of $20,000.00 for attorney's fees on appeal, (4) attorney's fees of $15,000.00 in the event of an unsuccessful petition by White for review in the Texas Supreme Court, and (5) attorney's fees of $15,000.00 in the event of an unsuccessful appeal by White in the Texas Supreme Court.  *See* TEX. R. APP. P. 43.2(c); *see also, e.g.*, *Am. 10-Minute Oil Change, Inc.*, 783 S.W.2d at 602; *Carto Prop., LLC*, 2018 WL 827558, at \*16.

/Ada Brown/
ADA BROWN
JUSTICE

170761F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MICROLASER THERAPY
CORPORATION D/B/A MSH
INVESTMENTS, INC., AS
AUTHORIZED AGENT FOR MICHAEL
S. HYNEK, ROY C. BROCK,
CHRISTINA BROCK, TIM HOUSE AND
PETER UTZIG, Appellant

No. 05-17-00761-CV     V.

ROSCOE F. WHITE, III, Appellee

On Appeal from the 95th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-17-04263.
Opinion delivered by Justice Brown;
Justices Myers and Evans participating.

In accordance with this Court's opinion of this date, the summary judgment orders of the trial court are **REVERSED** and judgment is **RENDERED** for appellant MICROLASER THERAPY CORPORATION D/B/A MSH INVESTMENTS, INC., AS AUTHORIZED AGENT FOR MICHAEL S. HYNEK, ROY C. BROCK, CHRISTINA BROCK, TIM HOUSE AND PETER UTZIG, in the amount of (1) $3,889,614.66 as of December 1, 2016 with interest continuing to accrue thereon at the rate of twelve percent per annum ($947.38 per diem) until paid in full for its breach of guaranty claim, (2) $10,033.07 for attorney's fees and expenses in the trial court, (3) $20,000.00 for attorney's fees on appeal, (4) $15,000.00 for attorney's fees in the event of an unsuccessful petition by appellee ROSCOE F. WHITE, III for review in the Texas Supreme Court, and (5) $15,000.00 for attorney's fees in the event of an unsuccessful appeal by appellee ROSCOE F. WHITE, III in the Texas Supreme Court. It is **ORDERED** that appellant MICROLASER THERAPY CORPORATION D/B/A MSH INVESTMENTS, INC., AS AUTHORIZED AGENT FOR MICHAEL S. HYNEK, ROY C. BROCK, CHRISTINA BROCK, TIM HOUSE AND PETER UTZIG recover its costs of this appeal from appellee ROSCOE F. WHITE, III.

Judgment entered this 16th day of November, 2018.